UNITED STATES of America, Appellee,

v.

Roy Antone NICHOLS, Appellant.

No. 86–1556.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 14, 1986.

Decided Jan. 6, 1987.

Rehearing and Rehearing En Banc
Denied Feb. 25, 1987.

James R. Wyrsch and Charles E. Atwell, Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, Mo., for appellant.

Michael A. Jones, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Circuit Judge.

Roy Antone Nichols appeals his conviction following a jury trial on a single-count indictment charging him with distribution of cocaine, a violation of 21 U.S.C. § 841(a)(1). He received an eight-year sentence, a $10,000 fine, and a three-year special parole term. Nichols argues the district court erred (1) in permitting the government to rebut his testimony with extrinsic evidence of his participation in drug sales in 1981, (2) in permitting the jury to hear portions of an audio tape of the November 14, 1985, transaction, (3) in refusing to permit his expert to examine original audio tapes recorded during FBI surveillance, and (4) in refusing to permit him to impeach an FBI agent with questions about the agent's traffic offense conviction and with extrinsic evidence concerning his knowledge of an informant's continuing drug-related activity. We affirm.

**BACKGROUND**

The indictment charged Nichols with selling four ounces of cocaine to FBI informant Michael Cox on November 14, 1985. Following his own arrest for a drug sale on October 18, 1985, Cox agreed to assist state and federal authorities by arranging a purchase with his supplier, whom he knew only as "Jeff." When shown a photograph of Nichols, Cox identified him as "Jeff." The FBI then installed a tape recorder on the telephone and in the "TV room" of Cox's home.

On October 26, 1985, Cox recorded a meeting he had with Nichols in the TV room during which he paid Nichols $1,800 he owed from previous transactions, discussed a purchase of liquid morphine and valium, and negotiated a sale of cocaine.

They agreed Cox would purchase four ounces of cocaine for $1,800 per ounce. On November 13, 1986, Nichols called Cox with instructions to contact him at work the following day to make final arrangements for the sale agreed to on October 26.

On November 14, Cox called Nichols's place of business from the Joplin, Missouri, FBI office and arranged to meet him in a supermarket parking lot in Carthage, Missouri. FBI agents then searched both Cox and his car to ensure he was not carrying drugs and gave Cox a white envelope containing $7,200. In addition, Cox was equipped with a concealed tape recorder and radio transmitter. Cox then drove alone to Carthage in his own car. Although FBI agents lost sight of Cox's car during the drive from Joplin to Carthage, they continuously monitored him through the radio transmitter to verify that he drove directly to the supermarket parking lot.

At the parking lot, Cox parked so that he was under surveillance by four agents at all times. Nichols arrived about fifteen to twenty minutes later, pulling up along side Cox in his own car. Cox got into Nichols's car and consummated the transaction. Upon exiting Nichols's car, Cox signaled the surveilling agents who arrested Nichols before he exited the parking lot. The agents found the $7,200 in the white envelope on the front seat of Nichols's car. Agents also searched Cox immediately and recovered a brown envelope containing approximately four ounces of cocaine. In addition, agents seized a small notebook from Nichols. Cox's nickname was written at the top of one of the notebook's pages along with his home telephone number and the name "Jeff."

In its case in chief, the government offered testimony from investigating officers, Cox, and Cox's wife, who was present during the October 26 meeting at Cox's home. In addition, the jury heard audio tapes of: (1) a telephone conversation between Cox and Nichols that occurred immediately before the October 26 meeting; (2) the meeting on October 26 between Nichols and Cox in Cox's TV room; (3) two telephone calls Cox made from the Joplin FBI office on November 14 to Nichols's place of business; and (4) the conversation between Nichols and Cox during the drug transaction on November 14 in Nichols's car. Each participant in each conversation, except Nichols, testified he or she had recently listened to the tapes, recognized his or her voice, and verified the tape was a fair and accurate recording of the conversation. Similarly, the agents monitoring the transmissions from Cox's concealed transmitter verified the accuracy of the tape of the November 14, 1985, sale.

An audio forensic expert who had examined copies of the original tapes testified for Nichols. His examination revealed unexplained occurrences on the tapes that suggested some stopping and starting during recordings. On cross-examination, however, he stated that the recording of the November 14 sale itself was continuous and contained no discontinuities suggesting erasures or rerecording.

In his testimony, Nichols stated that he went to the supermarket parking lot to collect a debt from Cox who had refused to come to Nichol's place of business because one of Nichol's colleagues was racially prejudiced. Nichols denied any of his meetings with Cox were for the purpose of selling drugs or arranging the sale of drugs. Cross-examining Nichols, the government asked him if he had participated in six specific drug transactions with government informant Jerry Mosby in 1981. Nichols denied the drug transactions but admitted knowing of Mosby.

The district court then permitted the government to rebut Nichol's denials with Mosby's testimony about the six 1981 drug transactions with Nichols.

## DISCUSSION

Nichols's principal argument on appeal concerns the admission of Jerry Mosby's

testimony to rebut his denial of any involvement in the six 1981 cocaine transactions. He contends that Fed.R.Evid. 608(b) explicitly bars such extrinsic evidence and, further, that the testimony was inadmissible under Fed.R.Evid. 404(b). In response, the government cites *United States v. Smith Grading and Paving, Inc.*, 760 F.2d 527 (4th Cir.1985), for the proposition that Rule 404(b) permits introduction of testimony otherwise inadmissible under Rule 608(b) and argues that Mosby's testimony was admissible to prove section 841(a)(1)'s elements of knowledge and intent.

■ Although evidence of similar drug crimes is frequently admissible to prove a defendant acted knowingly or intentionally, *United States v. Jardan*, 552 F.2d 216, 218 (8th Cir.1977), under the circumstances, we do not believe Mosby's testimony was relevant to these issues in Nichols's case. The government did not offer this evidence in its case in chief to prove Nichols's knowledge and intent. Rather, it claims Nichols's denial of any drug sales to Cox and his expert witness's attack on the integrity of the audio tapes rendered it necessary for the government to prove these elements in rebuttal.

Nichols's denial of any drug sales to Cox, however, did not imply he sold cocaine unknowingly or unintentionally, that is, by mistake or accident.[1] Unlike the defendant in *United States v. Smith*, 552 F.2d 257, 259–60 (8th Cir.1977), which the government offers to support the admission of Mosby's testimony, Nichols did not claim he lacked the intent necessary under section 841(a)(1). He denied any drug sale took place, intentional or unintentional.

Furthermore, nothing about Mosby's testimony contradicted Nichols's claim of innocent dealings with Cox because the government neither suggested nor proved any connection between the 1981 transactions with Mosby and the November 14, 1985, transaction with Cox. The absence of any connection between the Cox and Mosby transactions and the almost four-year lapse of time between the two incidents distinguishes the cases the government offers in support of its argument. *See United States v. Koessel*, 706 F.2d 271 (8th Cir. 1983) (prior misconduct involved same buyer of drugs from defendant as charged conduct); *United States v. Evans*, 697 F.2d 240 (8th Cir.1983) (prior misconduct necessary to explain why co-defendant contacted defendant to get involved in charged conduct); *United States v. Jardan*, 552 F.2d 216 (8th Cir.1977) (prior misconduct evidence concerned activity occurring in month previous to charged conduct and was admitted in government's case in chief); *United States v. Carlson*, 547 F.2d 1346 (8th Cir.1976) (prior misconduct evidence relevant to conspiracy charge and concerned transactions within six days of the charged transactions).

■ Although we believe the government failed to establish the admissibility of Mosby's testimony under Rule 404(b), we must review this issue against the trial record as a whole and ignore errors that are harmless. *United States v. Horvath*, 731 F.2d 557, 560 (8th Cir.1984) (quoting *United States v. Hastings*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)). The government's case against Nichols was overwhelming. Both state and federal agents observed the November 14, 1985, transaction between Cox and Nichols and monitored it over the transmitter concealed on Cox's person. Nichols had the purchase money in his possession when he was arrested. Cox had four ounces of cocaine immediately after the transaction although FBI agents had thoroughly searched both Cox and his car immediately before he drove to the supermarket parking lot. In the face of this evidence, we find any error

---

**1.** "An act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason." 1 E. Devitt and C. Blackmar, *Federal Jury Practice and Instructions* § 14.04 (1977).

concerning the admission of Mosby's testimony harmless beyond a reasonable doubt. *Cf. Horvath*, 731 F.2d at 562–63 (given weight of other evidence, admission of prior misconduct evidence harmless error).

■ Nichols also alleges the district court erred in failing to exclude portions of the audio tape of the November 14, 1985, meeting with Cox in which Nichols mentioned a grand jury investigation, a statute of limitations problem, and another person's being "busted" on thirty-five counts with Nichols's consequent ascension to second in command. This discussion, however, occurred after Cox inquired why Nichols had missed a previous meeting they had arranged to complete the transaction they discussed on October 26, 1985, in Cox's TV room. Thus, it was probative to explain the reason Cox and Nichols were meeting and to rebut Nichols's anticipated defense that his meeting with Cox was entirely innocent. This portion of the tape was, therefore, admissible under Rule 404(b). *United States v. Evans*, 697 F.2d at 247–48. Consequently, the district court did not abuse its discretion in refusing to exclude this portion of the tape. *Id.* at 248.

■ We also find the district court did not abuse its discretion in refusing to require the government to supply Nichols's audio forensic expert, Dr. Bernard Krause, with the original audio tapes. The government offered copies of these tapes to Nichols three and a half months before trial, but, ten days before trial, Nichols announced his expert needed to examine the originals on his own equipment in San Francisco, California. In light of Nichols's belated request, the district court reasonably refused to order production of the originals at such a distance. Moreover, after reviewing the record, we do not believe that limiting Dr. Krause to the copies

prejudiced Nichols. Dr. Krause testified at length about his examination of the copies and conceded on cross-examination that he found no erasures or rerecordings on the portion of the November 14, 1985, tape that included the sale to Cox.

■ Finally, Nichols argues the district court erred in limiting his impeachment of FBI Agent Nolan, the principal investigator in the case against Nichols. Nichols wanted to examine Nolan about a traffic conviction for driving while intoxicated. We agree with the district court's refusal to allow questions about this subject. Such impeachment is proper only if the conviction permits imprisonment greater than one year or involves dishonesty or false statement. Fed.R.Evid. 609. We also find the district court did not abuse its discretion in excluding hearsay testimony from the Chief of Police of Baxter Springs, Kansas that Nichols offered to impeach Nolan's credibility. According to Nichols, this witness would have testified that he had heard that the government's informant, Cox, continued to deal drugs after Nichols's arrest. Of dubious relevance, at best, this proposed testimony was properly excluded under Fed.R.Evid. 403 as a collateral matter.

Accordingly, we affirm Nichols's conviction.