**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Cesar L. MANGANELLIS,**
**Defendant–Appellant.**

**No. 88–1140.**

United States Court of Appeals,
Seventh Circuit.

Argued May 25, 1988.
Decided Dec. 28, 1988.

Mark A. Eisenberg, Madison, Wis., for defendant-appellant.

Grant C. Johnson, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before WOOD, Jr., FLAUM, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Cesar L. Manganellis, defendant-appellant ("Manganellis"), was indicted on six counts of "knowingly and unlawfully distribut[ing]" cocaine (between seven grams and one ounce for each count), in violation of 21 U.S.C. § 841(a)(1) (1982) ("section 841(a)(1)").[1] Manganellis filed several pretrial motions, among them requesting the following: (1) severance of Counts II–VI from Count I, (2) a jury instruction regarding the credibility of a witness who is a cocaine addict, and (3) precluding the admission of extrinsic evidence concerning his alleged prior bad acts.[2] The district court adopted the magistrate's recommendations and denied Manganellis' motions.[3]

The jury convicted Manganellis on all six counts. He was sentenced to six years incarceration on each count to be served

---

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. An indictment was originally returned against Manganellis on May 13, 1987, charging him with one count of violating section 841(a)(1). A superseding indictment, charging him with six counts of violating section 841(a)(1) was returned on September 16, 1987.

2. Because the extrinsic evidence at issue was not the subject of any previous prosecution against Manganellis, we will refer to this evidence, for convenience, as alleged prior bad acts rather than prior crimes. The admissibility of such evidence is resolved under the same standard.

3. The magistrate's report and recommendations were issued pursuant to 28 U.S.C. § 636(b)(1)(B).

concurrently followed by three years of special parole. Manganellis appeals his conviction, arguing that: (1) evidence of alleged prior bad acts was improperly admitted, (2) there was insufficient evidence to support the jury's verdict with respect to Counts II–VI, (3) the district court improperly denied his motion for severance of counts, causing undue prejudice, and (4) the district court improperly denied his request for a jury instruction about witnesses who are addicts. For the reasons stated below, we affirm Manganellis' conviction on all counts.

## BACKGROUND

The government's case-in-chief included the following evidence. Special Agent Timothy Schultz, an employee of the Wisconsin Department of Justice, Division of Criminal Investigation, testified that operating in an undercover capacity he met Manganellis on May 1, 1987 at the home of Leylon Hale in Eau Claire, Wisconsin. During this meeting, a transaction allegedly occurred between Schultz and Manganellis. John Nied, a Wisconsin State Crime Laboratory drug expert, identified the substance allegedly exchanged on May 1, 1987 as cocaine. This transaction is the basis for Count I.

At trial, Schultz identified records (notations on a pocket calendar) maintained by Hale, which were also later identified by Hale, of various cocaine deals she had allegedly made with Manganellis from April 1, 1987 through April 18, 1987 (the calendar is for 1986 but dates are changed apparently to conform to 1987). Hale was paid $2,400 by Schultz for arranging the subsequent May 1, 1987 deal with Manganellis and agreeing to testify against him.

FBI agent Charles Southworth testified that on May 1, 1987, someone driving a car belonging to Roberto Rivera approached Hale's residence. A white male walked out of the car, went into Hale's home, got back into the car and drove to Rivera's residence. Police reports describing this incident did not identify the white male by name, but simply referred to a "suspect." At trial, however, Southworth indicated that "suspect" referred to Manganellis. In addition, Southworth identified Manganellis at trial as the person he observed on May 1st driving Rivera's car.

Hale, testifying under a grant of immunity, stated that she and Manganellis met in January 1986 and during the summer of 1986 they discussed possible marijuana transactions. At some point, Manganellis and Hale became intimate. She also testified that Manganellis sold cocaine to her on five separate occasions during April 1987. These transactions are those alleged in Counts II–VI.

Hale's testimony regarding these five transactions was based on her recollection and her notes described above. She also stated that on each of the five occasions she personally used the substance exchanged and, based on her own experience, believed that the substance was in fact cocaine. No controlled substance allegedly distributed with respect to Counts II–VI was recovered or introduced at trial. As a result, the government did not introduce any expert testimony to establish that the substance allegedly exchanged with respect to Counts II–VI was cocaine. Hale testified that her sister flushed some of Hale's cocaine down a toilet on April 26, 1987.

Schultz testified that Hale informed him she had sold marijuana from Manganellis on ten occasions between February and October 1986. At trial, Hale testified that she sold marijuana for him four times a week during the summer of 1986 through the end of August.

Hale also testified that she used cocaine supplied by Manganellis. On cross-examination it was brought out that her pre-trial and trial testimony regarding the number of times she had used cocaine was slightly inconsistent: two or seven times in total, perhaps twice a day. Hale's testimony as to when she last used cocaine was also inconsistent. She initially said that her last time was prior to April 17–19, 1987 and later that she took cocaine on April 25, 1987. Finally, she testified that she stopped using cocaine by May 1, 1987, when she and Manganellis apparently broke off their personal relationship.

Wendy Bridge also testified for the government under a grant of immunity. She stated that she lived with Hale during the time that Hale received cocaine from Manganellis and had observed Manganellis in possession of cocaine on several occasions while at their home. She described one occasion during which Manganellis allegedly came to their residence and spoke with Hale, in Bridge's presence, about selling cocaine and later presented cocaine to Bridge and Hale. She also testified that she was present when Manganellis came to their residence and Hale agreed to distribute cocaine for him. Bridge testified that Hale used marijuana and cocaine. She also testified that when Hale took cocaine she would use it five or six times per day, occasionally injecting it with a needle. Finally, Bridge testified that she twice received cocaine from Manganellis.

Gerald Robinson, Manganellis' brother-in-law, testified that on one occasion in April 1987 he observed an exchange of money ($1,000) between Manganellis and another individual. According to Robinson, Manganellis later told him that the money was exchanged for cocaine.

Darlene Karpe testified on behalf of Manganellis. She stated that she purchased cocaine from Hale as early as January 1987, as opposed to April 1987, the date Hale testified as to her initial cocaine dealing. Karpe also testified that Hale frequently injected herself and others with cocaine and that when Hale used cocaine she injected herself approximately every hour. Finally, Karpe testified that as of October 1987, Hale was still distributing cocaine.

Manganellis did not testify at trial. His defense as to Count I was that he did not do the alleged act and was mistakenly identified. Schultz, who did not see Manganellis at any other time prior to the trial than at their May 1, 1987 meeting, could not recall at trial whether or not Manganellis wore a mustache during the alleged transaction. Manganellis' defense as to Counts II–VI was that he did not commit the alleged acts and that Hale, his chief accuser, was a liar and a drug addict.

## PRIOR BAD ACTS

Over the defendant's objections, the government was permitted to introduce the following extrinsic evidence noted above of Manganellis' prior bad acts: (1) Schultz testified that Hale told him that Manganellis had previously sold cocaine to Hale, (2) Hale testified that she and Manganellis had previously exchanged marijuana and discussed possible sales to other parties, and (3) Gerald Robinson testified that he saw Manganellis receive $1,000 from another individual and Manganellis told Robinson that the money was to purchase cocaine.

The evidence was admitted pursuant to Fed.R.Evid. 404(b) ("Rule 404(b)"), which states:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In other words, under Rule 404(b), evidence of a defendant's prior bad acts may not be introduced to prove his *propensity* to commit the crime charged. *Woodruff v. Lane,* 818 F.2d 1369, 1373 (7th Cir.1987); *Fuller v. Attorney General of Illinois,* 589 F.Supp. 206, 212 (N.D.Ill.1984), *aff'd* 762 F.2d 1016 (7th Cir.1985). A jury may not infer that because a defendant committed an illegal act once, he must have also committed another alleged similar act. *United States v. Daniels,* 770 F.2d 1111, 1116 (D.C.Cir.1985); *United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir.1985).

We have held that, in conjunction with Fed.R.Evid. 403 ("Rule 403"), evidence of prior bad acts may be admitted under Rule 404(b) only if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue ..., (3) the evidence is

clear and convincing, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Shackleford,* 738 F.2d 776, 779 (7th Cir.1984) (citations omitted).

The Supreme Court recently held that a preliminary showing that the evidence of prior bad acts is clear and convincing is not required. Instead, evidence of prior bad acts is admissible "if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Huddleston v. United States,* —— U.S. ——, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The other three requirements under *Shackleford* remain intact and, obviously, the jury must be instructed to consider the evidence for its proper limited purpose. *Id.* 108 S.Ct. at 1502 (citation omitted). Moreover, the district court must continue to "undertake a principled exercise of discretion" to determine whether the proffered evidence is admissible. *United States v. Leight,* 818 F.2d 1297, 1302 (7th Cir.1987). Finally, this case does not turn on the factor addressed in *Huddleston.*

In *Shackleford,* we distinguished, for purposes of admitting prior bad acts under Rule 404(b), between statutes which require proof of the defendant's *specific intent* to commit the crime charged and statutes which require proof of the defendant's *general intent* which may be inferred from his conduct.

> When the crime charged requires proof of specific intent, we have held that, because it is a material element to be proved by the government, it is necessarily in issue and the government may submit evidence of other acts in an attempt to establish the matter in its case-in-chief, assuming the other requirements of Rules 404(b) and 403 are satisfied.... On the other hand, we have stated that when intent is only a formal issue, so that proof of the proscribed act gives rise to an inference of intent, then unless the

government has reason to believe that the defense will raise intent as an issue, evidence of other acts directed toward this issue should not be used in the government's case-in-chief and should not be admitted until the defendant raises the issue.... To allow intent automatically to become an issue in that class of cases in which intent is inferable from the nature of the act charged would create an exception that "would virtually swallow the rule against admission of evidence of prior misconduct."

738 F.2d at 781 (citations omitted).

In response to the defendant's pre-trial motion to preclude the admission of the prior bad acts evidence, the government represented that the evidence would be introduced to prove the defendant's *intent.* R. 28, p. 5.[4] The magistrate recommended that the defendant's motion be denied on the grounds that "such evidence may be admissible under F.R.E. 404(b) to show that the defendant's conduct was knowing and it was not a result of mistake or accident. Whether the accumulation of such evidence is, or may be, unduly prejudicial under F.R. E. 403 can only be determined by the trial judge as the evidence is being offered." Defendant–Appellant's Appendix, at 19. As noted above, the district court adopted the magistrate's recommendation.

In response to the defendant's renewed objection at trial, the government stated that:

> We're going to show a pattern of conduct that he [Manganellis] is an individual that was engaged in the distribution of marijuana, and basically each one of the specific items that the Government is bringing in evidence for [relate to the pattern of conduct].

R. 78, p. 1–24. On appeal, the government maintains that the evidence was admissible to prove Manganellis' intent because, according to the government, section 841(a)(1) is a specific intent crime and thus the defendant's intent was necessarily in issue.

---

**4.** At oral argument, the defendant claimed that the government had previously argued that the extrinsic evidence was admissible to prove propensity. This, obviously, is prohibited by Rule 404(b). Our review of the record has not found such an argument advanced by the government. In any event, based on our analysis, the evidence was inadmissible to prove intent.

Manganellis argues that *specific intent* is not an essential element of section 841(a)(1), and that he did not raise intent as a defense. Instead, his defense was that he did not commit the acts alleged. Accordingly, Manganellis contends on appeal, as he did before the district court, that his alleged intent was not in issue and that the prior bad acts testimony was improperly offered to establish his propensity to commit the crime charged.

Contrary to the magistrate's apparent finding and recommendation, adopted by the district court, mistake or accident (lack of knowledge) was not put in issue by the defendant. Manganellis did not argue at trial, or suggest during pre-trial proceedings before the magistrate, that he committed the alleged acts but did so by mistake or accident. Rather, his defense throughout was that he did not commit the acts alleged at all. *Cf. United States v. Moschiano,* 695 F.2d 236, 243 (7th Cir.1982) (where a defendant raises entrapment as a defense, evidence of prior criminal conduct is admissible to prove predisposition). Unless Manganellis' intent (knowledge) was necessarily in issue because, as the government contends, section 841(a)(1) is a specific intent crime, it was improper to admit evidence of prior bad acts to prove his intent.

Moreover, even if section 841(a)(1) is a specific intent crime, the government may only introduce the prior bad acts to prove intent, not propensity, assuming in addition that the other three *Shackleford* requirements are satisfied.

> Even if we adopt the fiction that intent is always in question in such [specific intent] cases, such evidence is only admissible if it is really introduced to show *intent.* The government must show the relevance of the evidence to the question of intent. It cannot simply flood the courtroom with other-crimes evidence on the grounds that the crime was one of specific intent.

*United States v. Chaimson,* 760 F.2d 798, 813 (7th Cir.1985) (Cudahy, J., concurring) (emphasis in original).

Section 841(a)(1) reads as follows:

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; ...

21 U.S.C. § 841(a)(1). Manganellis was charged with "knowingly and unlawfully distribut[ing]" cocaine. The act combined with the requisite intent is unlawful. The *act* charged is distributing cocaine. The *intent* charged is knowingly distributing cocaine, although the statute proscribes either "knowingly or intentionally" distributing cocaine. Why the indictment charged only knowing and not intentional distribution is not clear.

After noting the widespread confusion in the law in terms of defining the intent element of crimes, the Supreme Court has stated that, "[i]n a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." *United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1979) (citing Model Penal Code § 2.02, Comments, p. 125 (Tent.Draft No. 4, 1955); W. LaFave & A. Scott, Handbook on Criminal Law § 28, 201–02 (1972)). *See also United States v. Hutchings,* 751 F.2d 230, 239 (8th Cir.1984) (distinguishing between knowledge and purpose). Commentators have also noted that something more than knowledge is required for specific intent crimes.

> To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, (or knowingly failed to do an act which the law requires,) *purposely intending to violate the law.*

1 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 13.03 (1970) (emphasis added).

The government cites *United States v. Liefer,* 778 F.2d 1236 (7th Cir.1985) in support of its argument that section 841(a)(1) is a specific intent crime. In *Liefer,* defendant Liefer was charged with conspiracy to distribute marijuana, a violation of

21 U.S.C. § 846 ("section 846"). The government introduced evidence in its case-in-chief that an unindicted co-conspirator had, during a time not charged in the conspiracy, travelled to Liefer's farm to pick up a large amount of marijuana. According to the government, such evidence was admissible to establish Liefer's "intent and knowledge about marijuana distribution and his plan to carry on the business by receiving and storing large quantities at his farm." 778 F.2d at 1242.

After noting the inherent dangers of admitting such extrinsic evidence, we held that because the crime charged was a conspiracy "to distribute, *with intent to distribute*," the defendant's "specific intent to distribute was an essential element of the crime, and therefore intent was not merely a formal issue as it was in *Shackleford*." 778 F.2d at 1242–43 (emphasis in original). The fact that Liefer was prepared to concede the issue of intent was irrelevant; since intent was necessarily in issue, the government was permitted to introduce extrinsic evidence, so long as the other three parts of the *Shackleford* test was satisfied. *Cf. United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir.1980) (intent is not in issue if defendant concedes it and extrinsic evidence to prove intent is thereby inadmissible).

It does not follow from our holding in *Liefer* that section 841(a)(1) is a specific intent crime. Conspiracy, a violation of section 846, is an offense separate from the underlying substantive crime. *See Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In fact, it has been held that once a defendant pleads not guilty to the charge of *conspiracy* to engage in drug distribution, his intent is automatically placed in issue and extrinsic evidence is admissible to prove his intent. *United States v. Nahoom*, 791 F.2d 841, 845 (11th Cir.1986). Under this doctrine, the defendant can remove the issue of his intent from the case, presumably by a stipulation. *Ibid. Accord United States v. Munson*, 819 F.2d 337, 342 (1st Cir.1987).

Two or more persons can conspire for any number of reasons. The specific intent

charged in *Liefer* was that the defendant conspired with others *with the intent to distribute marijuana*. That intent is distinct from, for example, a conspiracy to rob a bank. Moreover, it is also distinct from Manganellis' alleged substantive crime of knowingly distributing cocaine. Manganellis was not charged with conspiracy.

In *United States v. Juarez*, 561 F.2d 65 (7th Cir.1977), the government discussed in its opening statement and introduced extrinsic evidence in its case-in-chief that the defendant charged with distributing heroin in violation of section 841(a)(1) had previously sold heroin. The defendant testified in rebuttal that he sold heroin on a previous occasion as an accommodation to his uncle, who happened to be a DEA informant, but that he did not sell any heroin thereafter (during the time charged in the indictment). 561 F.2d at 67. The defendant argued on appeal that the extrinsic evidence was inadmissible because it involved a previous charge which had been dismissed, as opposed to a conviction. That argument was easily rejected because Rule 404(b) applies to "other crimes, wrongs, or acts...." Fed.R.Evid. 404(b); *Juarez*, 561 F.2d at 70.

We also found that, in any event, the probative value of the extrinsic evidence outweighed any prejudice to the defendant. In our analysis, we noted that section 841(a)(1) "expressly includes the requirement that the distribution be done 'knowingly or intentionally.'" 561 F.2d at 72–73. We made no distinction, however, between specific and general intent crimes and did not state whether section 841(a)(1) is a specific intent crime. As noted, the statement concerning the elements of section 841(a)(1) was a part of our discussion of whether the requirements of Rule 403 were satisfied, not whether intent was necessarily at issue. Furthermore, we indicated that it was reasonable for the government to assume that the defendant would place his intent in issue, thus rendering the extrinsic evidence admissible. *Id.* at 73 (entrapment was a likely defense). The discussion in *Juarez* of the intent requirement of section 841(a)(1) can be best understood as addressing the question of whether evidence

of the defendant's intent was relevant but too prejudicial, not whether section 841(a)(1) is a specific intent crime.

The facts in *United States v. Nichols*, 808 F.2d 660 (8th Cir.), *cert. denied* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987), are similar to those in our case. There, the defendant was convicted of distributing cocaine (selling four ounces to an FBI informant), in violation of section 841(a)(1). The government's direct evidence consisted of testimony from investigating officers, the informant who consummated the alleged transaction ("Informant A") and Informant A's wife who was present during a pre-deal negotiation between the defendant and Informant A at Informant A's home. Recorded phone conversations of meetings between Informant A and the defendant were replayed before the jury. The government also introduced recorded conversations between FBI agents and Informant A which had taken place while the agents were monitoring events just prior to the transaction in issue. 808 F.2d at 662.

The defendant testified that he met Informant A to collect a debt, not to sell cocaine. On cross-examination, the government asked the defendant if he had participated in six previous drug transactions with another informant ("Informant B"). After the defendant denied any participation, the government was permitted to introduce testimony from Informant B about the previous drug transactions. *Ibid.*

On appeal, the government argued that the prior bad acts evidence was admissible under Rule 404(b) to prove the defendant's knowledge and intent under section 841(a)(1). The Court of Appeals for the Eighth Circuit concluded that the defendant's denial of any drug transactions with Informant A did not raise lack of knowledge or intent (i.e., mistake or accident) as a defense. Instead, the defendant simply "denied [that] any drug sale took place, intentional or unintentional." *Id.* at 663. In addition, the court found that the defendant's alleged transactions with Informant B were not connected to or necessary to explain the alleged transaction with Informant A. Accordingly, the evidence of other transactions was held to be inadmissible under Rule 404(b).

The *Nichols* court, nevertheless, found the error to be harmless based on the "overwhelming" other evidence. 808 F.2d at 663. The other overwhelming evidence consisted of observations of the alleged transaction by state and federal agents (monitored by a concealed transmitter), money recovered from the defendant's person and cocaine recovered from the informant's person following the transaction and recorded phone conversations between the defendant and Informant A.

Since the defendant in *Nichols* denied committing the acts alleged, he did not raise the lack of knowledge or intent (e.g., mistake or accident) as a defense. The Eighth Circuit did not specifically state whether or not section 841(a)(1) is a specific intent statute. However, implicit in its holding that knowledge or intent was not in issue is the conclusion that the statute itself does not automatically place the defendant's knowledge or intent in issue, i.e., that section 841(a)(1) is not a specific intent statute. Otherwise, the evidence might have been admissible to prove knowledge or intent even though the defendant did not contest his knowledge or intent.

The defendant cites *United States v. Gruttadauro*, 818 F.2d 1323 (7th Cir.1987) in support of his argument that section 841(a)(1) is not a specific intent crime. In *Gruttadauro*, a defendant union business agent was convicted of *willfully* receiving money from an employer, a violation of 29 U.S.C. § 186(b)(1) and (d). Gruttadauro was indicted for providing a business owner with bogus union cards to assist the owner in his efforts to prevent his employees from unionizing (the bogus cards were shown to ward off prospective unions from initiating a unionization drive). Gruttadauro's defense, raised during cross-examination of the business owner and his assistant, was that he was tricked into providing the cards, not knowing that there were no collective bargaining agreements.

On appeal, Gruttadauro challenged the admission of other crimes evidence of similar transactions between him and the same business owner involved in the indicted offenses. The government had introduced the evidence to prove Gruttadauro's intent. We concluded that the evidence should not have been admitted because, following the analysis provided in *Shackleford,* the crime is not a specific intent crime and the defendant did not raise lack of intent as an issue. 818 F.2d at 1327–28.

A specific intent crime is one which requires that the government prove that "a defendant specifically intend[ed] the consequences of his or her acts." 818 F.2d at 1328 (footnote omitted). Citing *Shackleford,* we noted that "a statute with a *general intent* requirement of *'knowing'* was not a specific intent crime, because the mental state could be inferred from the circumstances of the case." *Id.* at 1328 (emphasis added). Like the charge of knowing, "willfulness is a mental state that can be inferred from all the circumstances" and accordingly 29 U.S.C. § 186 (willfully receiving money from an employer) is not a crime for which intent is necessarily in issue. *Ibid.* The government need not prove that "the defendant intends the consequences of his or her acts." *Ibid.*

Because Gruttadauro did not claim "that he did not know his actions violated the law," he did not raise intent as an issue and the admission of extrinsic evidence under Rule 404(b) was improper. However, based on the strength of admissible evidence, Gruttadauro's conviction was affirmed. *Id.* at 1329. Although consistent with *Shackleford,* because *Gruttadauro* involved a charge that acts were committed willfully, it is not dispositive of whether *knowingly or intentionally* distributing cocaine under section 841(a)(1) is a specific intent crime. It is, however, consistent with the conclusion that mere knowledge of the nature of one's illegal act is not a specific intent crime.

As previously noted, the indictment charged only "knowingly and unlawfully distributing" and omitted "intentionally." Not surprisingly, the government has not brought any cases to our attention to support the proposition that intentionally distributing cocaine is a specific intent crime. Nor has the defendant discussed any cases which negate the proposition.

In *State v. Huber,* 356 N.W.2d 468 (S.D. 1984), a defendant was charged with, among other things, eluding a police vehicle and resisting arrest. Intentionally was used in the South Dakota statutes to define these crimes. *Id.* at 471, nn. 3 & 4. At issue was whether or not the defendant was entitled to a jury instruction that such crimes are specific intent crimes for which the doctrine of diminished capacity is available.

After discussing LaFave & Scott, Handbook on Criminal Law, § 28 (1972), the court held that the use of the term "intentionally" only serves to distinguish the level of culpability required as being "something more than negligence or recklessness." *Id.* at 473. It does not create a specific intent crime because it "does not designate an additional mental state beyond that accompanying the act." *Ibid.* We believe that the term "knowingly" by itself does not create a specific intent crime and does not render knowingly distributing cocaine, a violation of section 841(a)(1), a specific intent crime. Instead, it defines the act in question in a way which is generally inferable from evidence of the act. Use of the word "intent" can, however, create a specific intent crime. *See, e.g., Liefer, supra* (conspiracy with intent to distribute, a violation of section 846).

Many cases have held that where a defendant is charged with violating section 841(a)(1) the admission of extrinsic evidence under Rule 404(b) to prove the defendant's intent is proper if the defendant places his intent in issue. *See, e.g., United States v. Moore,* 732 F.2d 983, 987–88 (D.C. Cir.1984) (defendant claimed that he was present at the scene of the transaction by mistake and another defendant claimed that there was no intent to sell drugs, but instead to fool the undercover agent into giving up his money); *United States v. Tebha,* 770 F.2d 1454, 1457 (9th Cir.1985) (defendant was in possession of heroin, fol-

lowing his receipt of a mail delivery, but claimed he did not know it was heroin); *United States v. Lopez–Martinez,* 725 F.2d 471, 475 (9th Cir.1984) (defendant's defense was that he thought he was carrying marijuana, not heroin); *United States v. Scott,* 767 F.2d 1308, 1309–10 (9th Cir.1985) (defendant claimed that he intended to purchase the cocaine ($4,500) for his personal use); *United States v. Richardson,* 764 F.2d 1514, 1522–23 (11th Cir.1985) (defendant raised entrapment as a defense); *United States v. Paul,* 810 F.2d 774, 776–77 (8th Cir.1987) (defendant's defense was mere presence, extrinsic evidence could also prove identity and a scheme or plan); *United States v. King,* 768 F.2d 586, 588 (4th Cir.1985) (defendant's intent and presence in the company of two accomplices, i.e., accidental or mistaken, was in issue); *United States v. Tussa,* 816 F.2d 58, 68 (2d Cir.1987) (defendants claimed that their activities did not involve a drug transaction even though heroin was delivered to a car in which they were sitting); *United States v. Ramirez–Amaya,* 812 F.2d 813, 817 (2d Cir.1987) (defendant's defense was that he was merely a business associate of his alleged co-conspirator and had no intention to participate in drug transactions); and *United States v. Evans,* 697 F.2d 240, 248 (8th Cir.1983) (defendant claimed that he was travelling with alleged co-conspirators unaware that they were planning to participate in a drug transaction and that marijuana was in his car by mistake).

These cases do not contain any discussion about specific or general intent crimes. However, each court could have simply stated, if it were the case, that section 841(a)(1) is a specific intent crime and accordingly extrinsic evidence was admissible to prove intent so long as other considerations, e.g., Rule 403, were satisfied. Instead, it was the defendant who placed his intent in issue, effectively opening the door to the introduction of extrinsic evidence on this issue.

Other courts have held that in cases charging a violation of section 841(a)(1), Rule 404(b) is satisfied if the extrinsic evidence in question is merely relevant to the acts charged. The definition of relevancy used in these cases is a broad one and does not consider whether the defendant placed his intent in issue or whether the particular type of intent charged is a specific or general intent. *See, e.g., United States v. Bourgeois,* 746 F.2d 401, 405 (8th Cir.1984) (extrinsic evidence was admissible because it was "clear and convincing, relevant to establish appellant's intent, and more probative than prejudicial"); *United States v. Carter,* 760 F.2d 1568, 1579 (11th Cir.1985) ("[T]he extrinsic act tends to make the existence of an unlawful intent more probable than it would be without the evidence.... The extrinsic act is therefore relevant to the issue of intent.... Regardless of the defense presented, the government still has the burden of proving each and every element of the crimes charged.... [E]xtrinsic evidence is an acceptable means of proving that intent"); and *United States v. Hutchins,* 818 F.2d 322, 329 (5th Cir.1987). Following *Shackleford,* we have rejected this line of reasoning, requiring instead that, among other things, the defendant place his intent in issue or the statute be a specific intent statute.

Other cases have held that where the defendant is charged with violating section 841(a)(1) the government may introduce extrinsic evidence in its case-in-chief to prove the defendant's intent if the government reasonably anticipates that the defendant will place his intent in issue. *See, e.g., United States v. Mergist,* 738 F.2d 645, 650 (5th Cir.1984); *United States v. Lewis,* 759 F.2d 1316, 1349, n. 14 (8th Cir.1985); and *United States v. Leisure,* 807 F.2d 143 (8th Cir.1986). *See also Juarez,* 561 F.2d at 73. It was clear that Manganellis would not raise such a defense.

In *Lewis, supra,* one defendant was charged with *conspiring* with the other defendants to willfully and knowingly distribute cocaine. Non-extrinsic evidence introduced included taped conversations of the defendant and a co-defendant discussing drug transactions. On appeal, the court held that extrinsic evidence of prior dealings between the defendant and one of the co-defendants was admissible to prove his intent and knowledge apparent from

the taped conversations. The *Lewis* court cited *United States v. Gocke,* 507 F.2d 820, 824 (8th Cir.1974), *cert. denied* 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1975), which had held that extrinsic evidence is "generally admissible" to prove intent or knowledge "[w]here specific intent and guilty knowledge are elements of the crime charged, ..."

*Gocke* involved counterfeiting, a violation of 18 U.S.C. § 471, which requires a specific intent to defraud. The court in *Lewis* apparently held that a statute proscribing willful and knowing distribution of cocaine is also a specific intent crime. However, the court did not make any distinction between specific and general intent crimes. In addition, the court also held that the government could introduce the evidence in its case-in-chief in *anticipation* of the defendant's defense. 759 F.2d at 1349, n. 14. This implies that section 841(a)(1) itself does not allow the government to introduce the evidence under Rule 404(b) but the defendant must put his intent in issue or give the government reason to believe he will put it in issue. Moreover, it appears that *Shackleford* and *Gruttadauro* stand for the proposition that knowledge and willfulness are not specific intents.

In *Leisure, supra,* the defendant was convicted of conspiring to distribute cocaine. Evidence of previous marijuana transactions was introduced at trial. Citing *Lewis,* the court on appeal noted that the defendant "concedes that evidence of prior drug transactions may be relevant to show a defendant knowingly and intentionally joined the drug conspiracy charged." 807 F.2d at 144. It could thus be argued that *Leisure* falls within the category of cases cited above which broadly hold that where intent is "relevant," extrinsic evidence is admissible.

*Leisure* makes no distinction between specific and general intent crimes and does not address the fact that the defendant in *Lewis* was charged with willfully and knowingly conspiring to distribute cocaine while the defendant in *Leisure* was charged with knowingly and intentionally joining a conspiracy to distribute cocaine.

Furthermore, like *Liefer, supra,* both *Leisure* and *Lewis* charged a conspiracy, although they also charged a violation of section 841(a)(1). In sum, neither *Lewis* nor *Leisure* specifically state that, in the context of Rule 404(b), section 841(a)(1) is a specific intent crime.

In *United States v. Pierce,* 792 F.2d 740 (8th Cir.1986), the defendant was convicted of knowing and intentional distribution of PCP, in violation of section 841(a)(1). The defendant testified and denied that any transaction in question took place, drug related or otherwise. The government drug agent testified that the defendant told him he would only conduct the transaction in question in a public place due to the fact that he was robbed in a prior drug sale. On appeal, the court held that the testimony was admissible because "[i]t is indicative of [the defendant's] participation in the incident." 792 F.2d at 743. The court does not make any distinction between specific and general intent crimes and its reasoning implies that the evidence in question did not prove intent but rather the fact that he participated in the sale itself, i.e., the act.

In other situations which did not involve violations of section 841(a)(1), courts have made explicit distinctions between specific and general intent crimes with respect to admitting extrinsic evidence under Rule 404(b). *See, e.g., United States v. Brantley,* 786 F.2d 1322, 1329 (7th Cir.1986) (interstate transportation of stolen checks, requiring a fraudulent intent, is a specific intent crime); *United States v. Draiman,* 784 F.2d 248, 254–55 (7th Cir.1986) (mail fraud is a specific intent crime); *United States v. Birkenstock,* 823 F.2d 1026, 1028 (7th Cir.1987) (willful failure to file income tax returns is a specific intent crime); and *Shackleford,* 738 F.2d at 781 (attempting to knowingly collect a debt through extortion is not a specific intent crime).

Commentators have explained that, for example, common law burglary is a specific intent crime because in addition to the act of breaking and entering another person's house the crime requires that the defendant did so "with intent to commit a felony therein." 1 W. LaFave & A. Scott, Sub-

stantive Criminal Law, § 3.5, p. 315 (1986). As another example, common law larceny is the "taking and carrying away of the property of another," combined with the "intent to steal" that property. *Ibid. See United States v. Hudson*, 843 F.2d 1062, 1067 (7th Cir.1988) (entering a federally-insured credit union with the intent to commit a larceny is a specific intent crime). According to LaFave & Scott, "the most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." LaFave & Scott, § 3.5, p. 315.

Significantly, the Model Penal Code has adopted four general levels of culpability, in addition to strict liability, and makes no distinction between specific intent and general intent crimes. The Model Penal Code proposes that statutes proscribe acts which are done either purposely, knowingly, recklessly or negligently. Model Penal Code § 2.02 (Proposed Official Draft 1962).

■ Based on the foregoing analysis, we conclude that unlawfully distributing cocaine or unlawfully and intentionally distributing cocaine is a general intent crime. The intent required is not above or beyond that which can generally be inferred based on proof of the act (distribution) in question. Instead, it generally describes the act prohibited and distinguishes it, at most, from accidental or mistaken distribution, defenses not raised by Manganellis.

The government was required to prove Manganellis' intent beyond a reasonable doubt. Under the rubric of Rule 404(b), that intent was not a "specific intent." Accordingly, the admission of prior bad acts evidence was erroneous and we must determine whether or not it was nevertheless harmless.

## HARMLESS ERROR ANALYSIS

An error is *not* harmless if it "had substantial influence" on the jury. *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). Only if the error had no or a "very slight effect" such that we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," can we conclude that the error was harmless. *Id.* at 764–65, 66 S.Ct. at 1247–48. An error is harmless if the other untainted incriminating evidence is overwhelming. *United States v. Hudson*, 843 F.2d 1062, 1070 (7th Cir.1988).

Manganellis argues that the admission of prior bad acts was not a harmless error. The erroneous admission of a defendant's other bad acts carries a heavy presumption that it had a significant effect on the jury:

> Except in unusual circumstances, emanations from evidence of a defendant's bad acts are almost always suggestive of a defendant's propensity to commit other bad or criminal acts and tend to impugn his or her credibility, and errors in admitting such evidence consequently often go to the fundamental fairness of the trial. Unless there is other evidence that overwhelmingly establishes the defendant's guilt, we think evidence of other acts or crimes will reasonably play a substantial role in swaying the jury.

*Shackleford*, 738 F.2d at 783–84. *See also United States v. Vargas*, 583 F.2d 380, 387 (7th Cir.1978); *United States v. Swiatek*, 819 F.2d 721, 728 (7th Cir.1987) (admission of prior bad acts was harmless error where other evidence was "overwhelming"); *Gruttadauro*, 818 F.2d at 1327; *Hudson*, 843 F.2d at 1070 (admission of prior bad acts was not harmless).

### Count I

■ With respect to Count I, the admissible evidence was clearly overwhelming. Agent Schultz testified as a witness to the transaction. He was supported by backup police officers and an FBI agent who followed Manganellis before and after the transaction. The cocaine allegedly exchanged was introduced at trial. Schultz' credibility was not impeached and he identified Manganellis at trial. Hale also testified about the May 1st transaction, which she was paid to set up.

On cross-examination, Agent Schultz testified that several police officers and FBI Agent Southworth followed Manganellis on May 1, 1987 from Roberto Rivera's residence to Leylon Hale's, the place of the alleged transaction. FBI Agent Southworth, called as an adverse witness by the defendant, testified that a white male identified as "suspect" in the police report introduced at trial drove up in Roberto Rivera's car to Hale's residence during the time of the May 1, 1987 transaction. On the government's redirect examination, Southworth indicated that the report "refers throughout to [the] suspect which in this situation is Cesar Manganellis." R. 76, p. 2–23. In addition, Southworth identified the defendant ("suspect") in the courtroom at trial. R. 76, pp. 2–18, 2–19.

Manganellis argues on appeal that the elicitation of this evidence was improper because it came without a foundation that the "suspect" was Manganellis. Sabino Hernandez and Roberto Rivera were related to this investigation since Schultz previously tried, unsuccessfully, to purchase drugs from them. The white male drove up in Rivera's car. Implicit in Manganellis' argument is the suggestion that the "suspect" could have been Hernandez or Rivera.

The elicitation of this evidence was not objected to during Schultz' testimony and Agent Southworth was called to testify by Manganellis. In any event, we find that a foundation was laid by Southworth, although apparently after his and Schultz' initial testimony. In addition, while the police report on its face is subject to numerous interpretations, Southworth's subsequent testimony (on the government's redirect examination) clarified that the "suspect" was in fact Manganellis. Indeed, he identified Manganellis at trial.

Given the fact that the admissible incriminating evidence with respect to Count I was overwhelming, we find that the admission of the prior bad acts evidence was harmless.

### Counts II–VI

Although previously discussed, for the purpose of clarity, we will identify the

facts elicited at trial by the government which support the conviction of Manganellis on Counts II–VI exclusive of any prior bad acts evidence. Agent Schultz testified that the notations (prices and quantities) on Hale's calendar were consistent with drug transactions in the Eau Claire, Wisconsin area during the time in question. Schultz did not, however, testify that he had personal knowledge of these specific transactions or, based on Hale's notations, that he could conclude that the transactions, if real, were between Hale and the defendant or actually involved the exchange of cocaine. Schultz was not a witness to any transaction alleged in Counts II–VI but simply testified that, based on his undisputed expert experience, the notations on Hale's calendar were consistent with cocaine transaction prices during that time in that area.

Leylon Hale testified that she made the notations on the calendar to avoid possible further disputes with Manganellis over what money was owed. After using it to refresh Hale's recollection, the government introduced the calendar (during Hale's direct examination) without objection from the defendant. R. 78, p. 1–38. Not surprisingly, the defendant does not argue on appeal that this was an error at trial. The calendar was, however, inadmissible hearsay; it was introduced to prove the truth of the matters asserted and no specific exception in Fed.R.Evid. 803 is satisfied. While it might properly have been used to refresh Hale's recollection, it was not admissible. However, because the defendant did not object at trial, any argument at this point regarding the introduction of the calendar is waived and in any event has not been raised.

Hale's testimony concerning the alleged five transactions in Counts II–VI was based on her independent recollection as refreshed from the calendar notations. The indictment charged the following transactions: Count II, April 1, 1987, one-half ounce of cocaine exchanged; Count III, April 12, 1987, one ounce; Count IV, April 16, 1987, seven grams; Count V,

April 18, 1987, one-half ounce; and Count VI, April 26, 1987, one ounce. The notations on Hale's calendar are made on the following days in April 1987: 1, 4, 5, 11, 12, 13 (crossed out), 14, 16 and 18. There is no notation for the final transaction (April 26, 1987; Count VI), although Hale testified about this transaction. R. 78, p. 1–40. Hale also testified on direct examination that on April 16, 1987, five grams of cocaine, not seven as charged in the indictment, were exchanged. R. 78, p. 1–38. Some notations do not refer to alleged partial payments for prior transactions. The calendar is for twenty months (March 1986–October 1987) and there are notations on the April 1986 pages with the "correct" dates (1987) marked.

The identity of a controlled drug can be proven circumstantially. *United States v. Murray*, 753 F.2d 612, 615 (7th Cir.1985). In *Murray*, sufficient proof that the substance exchanged was marijuana consisted of testimony from two defendants (who pleaded guilty and testified against Murray) who had five to ten years of experience smoking marijuana that the substance in question was marijuana, the prices charged for the substance were consistent with those for marijuana and "the covert nature of the purchases" reflected marijuana sales. *Ibid.* Proof that the substance was in fact cocaine must, however, be established beyond a reasonable doubt. *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir.1984), *cert. denied, Harig v. United States*, 469 U.S. 1164, 105 S.Ct. 923, 83 L.Ed.2d 935 (1985); *United States v. Eakes*, 783 F.2d 499, 504 (5th Cir.), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986); *United States v. Scott*, 725 F.2d 43, 45–46 (4th Cir.1984). *Cf. United States v. Roman*, 728 F.2d 846, 859 n. 8 (7th Cir.) (the nature of the substance charged in a *conspiracy* count, e.g., conspiracy to distribute L.S.D., need not be proven beyond a reasonable doubt; the substance believed to be a controlled drug, e.g., L.S.D., need not be so in fact), *cert. denied*, 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984).

To prove that the substance exchanged in Counts II–VI was cocaine, the government relied on Hale's testimony that she knew it to be cocaine because she tried it, Hale's testimony that Manganellis told her it was cocaine and the notations on her calendar identified by Schultz as consistent with cocaine transactions. Thus, the circumstantial evidence in this case is similar to that presented and found to be sufficient in *Murray*. No cocaine allegedly exchanged, however, was introduced into evidence at trial.

The government also relied on Wendy Bridge's testimony. She testified that she observed Manganellis in possession of cocaine several times, overheard discussions between Hale and Manganellis about future distributions of cocaine, heard Hale agree to sell cocaine for Manganellis and received cocaine from Manganellis on two occasions. This corroborated Hale's general testimony, i.e., that Hale and Manganellis exchanged cocaine and discussed distributing it, although it does not specifically relate to the five transactions alleged in Counts II–VI.

Bridge testified that her observations were of events in April 1987. However, Bridge did not testify as to the specific transactions and dates alleged in the indictment. Bridge did testify that she was not aware of any records kept by Hale concerning the cocaine transactions. R. 78, p. 1–82.

Bridge also testified on direct examination that on April 2, 1987 she and Hale obtained one ounce of cocaine from Sabino (Hernandez) and that the transaction was conducted with Sabino because Manganellis was out of town and had indicated to Bridge that she should deal with Sabino. R. 78, pp. 1–77, 1–78. On cross-examination, the date of this alleged transaction was testified to as being April 5, 1987. R. 78, pp. 1–85, 1–86. A document evidencing this transaction was accepted into evidence apparently as a recorded recollection, Fed. R.Evid. 803, over Manganellis' objection. On appeal the defendant has not raised any objection to the introduction of this evidence and accordingly any objection is therefore waived.

Finally, Diane Karpe, a witness for the defendant, testified on cross-examination that Manganellis told her that cocaine she received from Hale at a party on April 26, 1987 was his. R. 76, p. 2–53.

■ Viewing the admissible evidence as to Counts II–VI as a whole, while not as impressive as that with respect to Count I, it was substantial. In contrast, the inadmissible evidence was minimal and not substantial. As previously indicated, it consisted of Schultz testifying that Hale told him Manganellis had sold cocaine to Hale prior to April, Hale testifying to some earlier marijuana transactions with Manganellis and Robinson testifying that Manganellis told him $1,000 he had received from another individual was for cocaine. It could have been argued that Robinson's objectional testimony was admissible as Manganellis' admission, under Fed.R.Evid. 801(d)(2)(A).

It is unfortunate that the prosecution, as it frequently does, sought to introduce evidence of other presumably illegal activity in its case-in-chief before the defendant had taken the stand or denied knowledge or intent. While such evidence may be admissible in the prosecution's case-in-chief if a specific intent crime is charged, it is almost always admissible on cross-examination of a defendant if he denies knowledge or intent or asserts that he has never engaged in similar illegal activities. Where the defendant does not take the stand, the admission of such evidence in the prosecution's case frequently is error and presents a reviewing court with the difficult determination of whether or not its admission was so prejudicial that reversal and a new trial are mandated.

This case is a classic example of prosecutorial over-kill. With the direct evidence of a face-to-face transaction with Schultz on May 1st, there was very substantial evidence of Manganellis being a cocaine dealer and engaging in illegal transactions other than those charged in Counts II–VI. And, as indicated, the evidence with respect to Counts II–VI while not as strong was nevertheless substantial. If the prosecution could not have convinced a jury of Manganellis' guilt as to those counts without the other dubious evidence, some of it hearsay and relating to marijuana not cocaine, it did not deserve to win.

Given the substantial evidence relating directly to Counts II–VI and the overwhelming evidence as to a similar transaction in Count I, we are satisfied that the erroneous admission of the relatively insubstantial evidence of possible other illegal conduct, though unfortunate, was harmless. Given the imprecise line between specific and general intent crimes, we would urge in the future, however, that such evidence be received only after the defendant has denied knowledge or intent or has denied ever engaging in similar conduct. That procedure will assure that convictions are based on admissible evidence and obviate the necessity for a reviewing court to determine whether or not its admission was reversible error. Finally, we note that the other considerations under *Shackleford* have either not been raised on appeal or have been addressed in our discussion above.

## SEVERANCE

Manganellis moved for a severance of Counts II–VI from Count I under Fed.R. Crim.P. 14. We must decide whether the district court's denial of Manganellis' motion for severance was a "clear abuse of discretion." *United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir.1980); *United States v. Goudy*, 792 F.2d 664, 673 (7th Cir.1986); *United States v. Bruun*, 809 F.2d 397, 407 (7th Cir.1987) (severance ruling will be reversed "only if it results in manifest and substantial prejudice; ...."). A district court has wide latitude in ruling on a motion for severance because of its unique perspective on the possible prejudice to the government or the defendant. *Goudy*, 792 F.2d at 673. Rule 14 provides in relevant part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts,

grant a severance of defendants or provide whatever other relief justice requires.

Manganellis claims that severance was mandated because the jury likely confused and accumulated the evidence or the jury may have found that he was guilty of one alleged crime, e.g., Count I, and concluded that he was therefore necessarily guilty of the other alleged crimes, e.g., Counts II–VI. The government contends that the jury was properly instructed to consider each count separately, *see* R. 76, pp. 2–80, 2–81, and that the evidence was not too confusing so as to deny Manganellis a fair trial.

█ We believe that the district court did not abuse its discretion by denying Manganellis' motion for severance. This case involved one defendant. His defenses on each count were not inconsistent, in fact they were nearly identical: he did not commit the alleged acts. The major difference is the fact that the government's proof with respect to Count I was very substantial, but its proof with respect to Counts II–VI was less strong.

That is no basis for a severance. If the evidence as to Counts II–VI has been insufficient to sustain a jury verdict of conviction, the trial judge could have directed a verdict or set aside the jury's verdict. As we have found, however, the evidence as to those counts was substantial and justified a conviction.

## JURY INSTRUCTION

Manganellis requested that the following instruction be read to the jury regarding the credibility of Hale, an alleged cocaine addict:

> If an informer is also a narcotics addict, there are additional reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit, and also may have abnormal fear of imprisonment in which his supply of drugs might be cut off. These are special circumstances which you may consider in weighing tes-

timony of this kind. You of course may give the testimony such weight as you think proper, after considering all relevant circumstances.

1 E. Devitt & C. Blackmar, § 17.03. The government objected to the instruction, claiming that Hale was a cocaine user but not an addict. The district court denied Manganellis' instruction, after concluding that the evidence was not sufficient to establish that Hale was an addict and that the instruction made unacceptable assumptions about addicts. R. 76, pp. 2–67, 2–68.

In *United States v. Shigemura,* 682 F.2d 699, 702–03 (8th Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983), the following four factors were considered in determining whether an addict instruction was necessary: (1) was the informant an addict at the time of the trial, not when the alleged transactions occurred; (2) was her addiction subject to cross-examination; (3) was the jury instructed that the addict's testimony should be particularly scrutinized; and (4) was the addict's testimony corroborated. *See also United States v. Tousant,* 619 F.2d 810, 812 (9th Cir.1980) ("Where the fact of addiction is not clear and where the district court has not precluded the defendant from establishing it, it is not error to reject an instruction on addiction.") (citation omitted). The concerns with respect to assuring a fair trial are that the jury be properly instructed about addiction and its effects if a witness is an addict. The jury must also be appraised of the particular facts of a witness' drug use through direct and cross-examination.

The testimony at trial concerning Hale's drug use was inconsistent. She was an admitted user and seller but the extent of her previous use was disputed. The trial took place on November 23–25, 1987. Although Karpe testified that Hale was still distributing and using cocaine in October 1987, there was no evidence that Hale was still using or selling drugs at the time of Manganellis' trial.

The jury instructions included the following:

You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account the witness' intelligence, the witness' ability and opportunity to observe, the witness' age, the witness' memory, the witness' manner while testifying, any interest, bias or prejudice the witness may have, and the reasonableness of the witness' testimony considered in the light of all the evidence in the case.

R. 28, p. 2–76. No specific instruction was given as to the effects of being a drug user. There was no independent expert testimony at trial to establish the extent, if any, of Hale's addiction. Nevertheless, the evidence was strong that she had used cocaine frequently during and several months after the transactions charged against Manganellis.

As to Manganellis' ability to cross-examine Hale with regard to her drug use, the defendant claims on appeal that he was precluded from admitting into evidence the nature of Hale's drug use. Specifically, he claims that the district court prevented him from informing the jury that Hale had injected herself with cocaine and apparently that injection is indicative of addiction.

The defendant was precluded from cross-examining Hale about the nature of her drug use, specifically whether she had injected herself with cocaine. Relevant portions of Karpe's direct examination, however, show that the nature of Hale's drug use was brought out.

■ Although the jury was instructed to consider Hale's testimony carefully, this was not with respect specifically to her drug use. Hale's testimony regarding Count I was corroborated by Schultz and other objective physical evidence. Based on the lack of expert testimony that Hale was an addict, the extensive impeachment testimony concerning Hale's drug use and Schultz' testimony, we believe that the district court's refusal to give the jury instruction offered by Manganellis was not an abuse of discretion. Hale was subject to cross-examination and particularly questioned about the frequency and quantity of her use.

## CONCLUSION

The admission of the defendant's alleged prior bad acts evidence was harmless error. The district court's denial of the defendant's motion for a severance of counts was not an abuse of discretion. Finally, the district court's refusal to give the addict instruction requested by the defendant was not error. Accordingly, the defendant's conviction on all counts is affirmed.

AFFIRMED.