UNITED STATES of America,
Plaintiff–Appellee,

v.

SOUTHWEST BUS SALES, INC.,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Gary Hewitt BENNETT, Defendant–
Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Randall Parker BENNETT,
Defendant–Appellant.

Nos. 93–1145 to 93–1147.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1993.

Decided April 7, 1994.

Thomas Hanson, Des Moines, IA, argued (William P. Fuller, Sioux Falls, SD, on the brief), for appellant.

John Powers, Washington, DC, argued (Kent Brown, Robin R. Mann, Mary K. Ramirez and James H. Mutchnik, on the brief), for appellee.

Before McMILLIAN, Circuit Judge, LAY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

LAY, Senior Circuit Judge.

Gary Bennett and Randall Bennett owned and operated Southwest Bus Sales, Inc. ("Southwest"), located in South Dakota. They were in the business of procuring

school buses and selling them, via a competitive bidding process, to local school districts. Southwest and the Bennetts (referred to collectively as "defendants") were indicted for conspiring to suppress competition for the sale of buses and bus parts by allocating customers, rigging bids, and fixing prices, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (Supp. III 1991) (count 1); conspiring to commit mail fraud by using the mail to obtain fraudulent sales concessions from their bus body supplier, in violation of 18 U.S.C. § 371 (1988) (count 2); and two counts of using the mails to defraud their bus body supplier, in violation of 18 U.S.C. § 1341 (Supp. III 1991) (counts 3 and 4).

The district court[1] denied the defendants' motion to sever the antitrust count from the mail fraud counts, and the case was tried to a jury. The defendants did not request separate trials. The jury convicted the defendants of all charges other than conspiracy to commit mail fraud. The district court subsequently denied defendants' motions for acquittal or a new trial. The defendants brought this appeal, claiming: (1) that the offenses were improperly joined; (2) that the district court erred in admitting, on rebuttal, evidence of unrelated alleged conspiracies; (3) that the district court abused its discretion in excluding some of the defendants' evidence; and (4) that the verdicts are inconsistent and must be reversed. We affirm.

## I. BACKGROUND

### A. *The Sherman Act Count*

School districts in South Dakota buy a majority of the buses sold in the state and usually do so through a competitive bidding process. Schools generally accept the lowest bid, but sometimes accept a higher bid if, for example, they have a brand preference.

Pursuant to a grand jury indictment, the defendants were charged with conspiring with other bus distributors to allocate customers, rig bids, and fix prices.

At trial, numerous distributors testified that for a number of years they and the Bennetts had all participated in an agreement to allocate bus sales among themselves in South Dakota and to set price levels for the buses sold.[2] Through the mid–1980s, the distributors met annually at a hotel where they would agree on the prices for different size bus bodies and the most common options. If a particular sale was allocated to one distributor, the other distributors would bid at or above the agreed upon price while the one distributor would bid somewhat below that price.[3] The witnesses testified that the distributors appointed a "scorekeeper" to keep track of the number of buses each distributor sold and to coordinate allocations for upcoming school solicitations. If a school district did not take the lowest bidder, that sale would be counted towards the winner's total sales, and the distributor with the fewest sales would be allocated the next sale. Ron Block, the scorekeeper, testified that by 1984 the distributors stopped holding meetings and instead coordinated price changes and allocations through him by telephone.

All of the distributors implicated the defendants. One distributor testified that Gary Bennett recruited him into the conspiracy in 1980. Several of them placed Gary and Randall Bennett at the formal meetings held from 1981 to 1984, at which prices and allocations were set.[4] Several testified that they had discussed rigging bids with Gary Bennett and Randall Bennett over the telephone. Block, the scorekeeper, testified that all South Dakota bids were rigged until the summer of 1988 and that the defendants were in on all of them.

---

1. The Honorable John B. Jones, Chief Judge of the United States District Court for the District of South Dakota.

2. These co-conspirators had previously pled guilty in North Dakota, South Dakota or Montana and had been granted immunity for their testimony in this case.

3. According to the testimony, if one of the distributors could not attend a meeting, another

distributor would call the missing distributor with the price and allocation information. Additionally, throughout the year following the meetings, the distributors shared information by telephone or in informal meetings.

4. Gary Bennett allegedly attended six meetings held from 1981 to 1984, and Randall Bennett allegedly attended three of the meetings.

### B. *The Mail Fraud Counts*

Thomas Built Buses, Inc. ("Thomas"), was the bus body supplier for the defendants. Thomas has a program by which it allows its distributors to obtain discounts, known as sales allowances or concessions, on the prices the distributors pay when they purchase bus bodies from Thomas. By lowering the distributor's cost and its own profit, Thomas gives the distributor the ability to compete for bus sales in markets where Thomas's regular prices would otherwise be too high for the distributor to win a bidding competition. Thomas's intent is that the ultimate purchaser of the bus will be the actual recipient of the concession.

To obtain a concession, Southwest would call Thomas's regional sales manager, inform the manager of the particular upcoming solicitation, the expected range of bid prices, and the price that Southwest would like to bid. If the manager thought the concession was warranted, he would conditionally approve a concession amount for that solicitation. If Southwest was the successful bidder, it would submit with its order for the bus body a Sales Allowance Reconciliation Form ("SAR"). On the SAR, Southwest had to describe the customer, bid date, body size and options, what the competition bid, and the amount of Southwest's winning bid. Southwest also had to submit a signed purchase order or sales contract with the SAR to verify the selling price.

Since at least 1984, the defendants submitted false information to Thomas to support their requests for concessions. This was discovered in 1989 by Kenneth Hedgecock, the Thomas regional sales manager, when Jim Shafer, the transportation supervisor for the Brandon Valley School District, went to Thomas's factory to pick up a bus. Shafer realized that the purchase order sent to Thomas by Southwest had a different price and order date from the actual price and date, and Shafer sent a copy of the original purchase order to Hedgecock.[5] When Hedgecock and his supervisor confronted the defendants, they admitted that they doctored the concession request and said that the alteration was necessary for them to have profit levels sufficient to stay in business. Shortly thereafter, the parties terminated their relationship.

Thomas subsequently discovered other instances of doctored concession requests for the time period of 1984 through 1989. Comparing the original documents to the SARs and supporting price information that the defendants submitted to Thomas, Hedgecock specifically identified over 20 instances where the Bennetts submitted doctored documents to support fraudulent concession requests. Over 50 overt acts were alleged in count 2 of the indictment. Both Bennetts admitted that they submitted false information to support concession requests. Gary Bennett admitted to altering documents and forging signatures, explaining that at times he would prepare a whole new purchase order with a false sales price, and at other times he would white out the original form and change the figures. He also admitted forging signatures on the forms.

The defendants claimed that they submitted fraudulent concession requests in order to stay in business. They also claimed that they never intended to defraud Thomas, because they were only doing what they were told to do by Bryce Hunt, who was Thomas's regional sales manager in the early 1980s.[6] Hunt testified that he never told either of the Bennetts to report anything on the SARs other than the truth, that neither he nor Thomas would tolerate false reports, and that he would never grant a concession request if he knew the information was false.

---

5. The purchase order that the defendants sent to Thomas to verify its SAR was dated May 15, 1989, and indicated a sales price of $32,296. The actual purchase order was dated January 25, 1989, and was for $38,064. According to Hedgecock, a sales price of $38,064 provided Southwest with a profit in excess of $3,000, and Thomas would not have granted a concession under such circumstances. Relying on the false information submitted by the defendants, Thomas granted the defendants a $1,600 concession on the sale.

6. Gary Bennett testified that, in response to a concession verbally agreed upon, Hunt told Gary that the SAR "figures should be consistent with whatever [Hunt] had promised us as a concession" and that Hunt wanted the defendants to "cover him."

## II. DISCUSSION

### A. *Joinder of Sherman Act Count with Mail Fraud Counts*

■ The defendants moved under Rule 8 of the Federal Rules of Criminal Procedure to have the Sherman Act count severed from the mail fraud counts. The defendants did not move under 8(b) to have separate trials for the parties. Rule 8(a), entitled "Joinder of Offenses," provides for broader joinder than does Rule 8(b), "Joinder of Defendants." [7] The primary distinction is that Rule 8(a) allows for the joinder of offenses that are "of the same or similar character," whereas Rule 8(b) does not and thus provides for joinder in fewer situations.

■ The district court analyzed the defendants' motion to sever the offenses under Rule 8(a). This was a sensible choice in light of the subtitles and wording of the rule. The district court reasoned that counts 1 and 2 "allege different conspiracies and do not constitute a common scheme or plan; however, it's the view of the Court that these Counts all allege fraud and are, therefore, of a similar character." The court thus found that the counts were properly joined under Rule 8(a).

On appeal, the defendants argue that the counts cannot be joined under Rule 8(a) because the conspiracies are not of the "same or similar" character. The government, in turn, contends that Rule 8(b), and not Rule 8(a), applies to questions of joinder when multiple defendants are involved. *See United States v. Jones*, 880 F.2d 55, 60–61 (8th Cir.1989). The government asserts that the Sherman Act count and mail fraud counts were part of an overall scheme by the defendants to maximize profits on each bus sold, and as such were properly joined under Rule 8(b). [8]

Most courts that have addressed the issue have decided that Rule 8(a) applies only to single defendants who are challenging the joinder of offenses against them at a single trial, whereas Rule 8(b) applies to all multiple defendant situations. *See* 1 Charles A. Wright, *Federal Practice and Procedure* § 144 (2d ed. 1982 & Supp.1993). A primary concern in allowing joinder of multiple defendants and offenses that are of the same or similar character is that prejudice will result from the spillover or accumulation of evidence. *See, e.g., United States v. Graham*, 548 F.2d 1302, 1310–11 (8th Cir.1977).

Where, as here, the defendants are all charged together with the same crimes and in the same counts, however, the concerns that normally underlie a court's reluctance to apply Rule 8(a) are no longer implicated to the same degree. There frequently will not be the same danger of prejudice resulting from spillover or accumulation of evidence. [9]

---

7. Rule 8 provides as follows:

  **(a) Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

  **(b) Joinder of Defendants.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

  Fed.R.Crim.P. 8.

8. Although we need not decide whether the various counts constitute the same act or transac-

tions, sufficient to find joinder proper under Rule 8(b), we would have great difficulty in adopting the government's reasoning. *Cf. United States v. Nicely*, 922 F.2d 850, 854–55 (D.C.Cir.1991) (reasoning that the common objective of making money and the shared method of telling lies are "patently insufficient grounds" for the joinder of two conspiracies).

9. This is not to say that in every case where multiple defendants are all indicted on the same counts that there is never a danger of prejudice in trying all of the offenses together. The remedy for joinder which is permitted under Rule 8, but is prejudicial, is found in Rule 14 of the Federal Rules of Criminal Procedure. Rule 14 provides in relevant part: "If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." Fed.R.Crim.P. 14. The district

In the present case, the government could have tried each of the defendants separately, but in each trial prosecuted all of the counts, provided that they were of the same or similar character. Thus, in a trial against Gary Bennett, the Sherman Act count and the mail fraud counts could have been tried together, and essentially all of the evidence that was introduced at the joint trial could have been introduced at his individual trial. Gary Bennett, Randall Bennett, and Southwest were all charged with the exact same crimes and in the same counts, and the evidence against them is largely identical.

We find joinder of the offenses was appropriate under Rule 8(a), as the district court reasoned, because the offenses were of a similar character. In this case, where all the defendants were charged with and tried on the same counts, and their challenge was to the joinder of offenses rather than the joinder of defendants, we conclude that Rule 8(a) is applicable.[10] In other situations involving multiple defendants, Rule 8(b) remains the appropriate vehicle by which to challenge the joinder of offenses or defendants. *Cf. Jones,* 880 F.2d at 60–61.

■ Our analysis here in no way detracts from our holding in *Jones.* We simply hold that under the facts presented, where the parties are charged with the same crimes in the same counts and complain only of the joinder of counts, Rule 8(a) applies. Moreover, in the present case, if our analysis is in error, the result remains unchanged. Even if there was misjoinder, we do not reverse the district court's decision because we find

no actual prejudice. *See United States v. Lane,* 474 U.S. 438, 449–50, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986).

None of the factors indicative of prejudice is present in this case.[11] The district court specifically instructed the jury to consider each offense against each defendant separately, and " 'juries are presumed to follow their instructions.' " *Zafiro v. United States,* — U.S. —, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993) (citation omitted). The jury's acquittal of the defendants on the mail fraud conspiracy count indicates that the jury did indeed consider the offenses separately and was able to "distinguish among the evidence presented on each count." *United States v. Hutchings,* 751 F.2d 230, 236 (8th Cir.1984), *cert. denied,* 474 U.S. 829, 106 S.Ct. 92, 88 L.Ed.2d 75 (1985). Additionally, there is abundant evidence of guilt with respect to each of the defendants on all of the counts for which they were convicted. Numerous distributors testified to the involvement of the defendants regarding the Sherman Act count, and there was ample testamentary and documentary evidence relating to the mail fraud counts. Much of the evidence that was admitted at the joint trial would also have been admitted at separate trials.

■ Finally, this case does not involve the risks of prejudice that may occur in a case involving multiple defendants and multiple counts. The individual defendants are brothers who own the corporate defendant. Each defendant was charged in all four counts of the indictment and they presented a coordi-

---

court is in the best position to make this determination. *See Schaffer v. United States,* 362 U.S. 511, 516, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960).

10. *See United States v. Eufrasio,* 935 F.2d 553, 570 & n. 20 (3d Cir.) (recognizing that other courts have applied Rule 8(b) to cases involving multiple defendants, but stating that it "seems to us that contrary to the jurisprudence in other circuits, when a joinder of offenses charged against the same defendant is challenged, the literal meaning of the Rule [8] requires application of Rule 8(a), irrespective of whether multiple defendants are involved in the case"), *cert. denied,* — U.S. —, 112 S.Ct. 340, 116 L.Ed.2d 280 (1991); *see also United States v. McGill,* 964 F.2d 222, 241 (3d Cir.), *cert. denied,* — U.S.

—, 113 S.Ct. 664, 121 L.Ed.2d 588 (1992); *United States v. Biaggi,* 909 F.2d 662, 675–76 (2d Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991).

11. Considerations that might lead to a finding of prejudice include: "(1) failure to give limiting instructions; (2) evidence of guilt that is not overwhelming; (3) admission of evidence that would be inadmissible in a trial of only properly joined defendants and counts; (4) evidence on the improperly joined charges that is indistinct and not easily segregated; and (5) en masse trial of numerous defendants." *United States v. Sazenski,* 833 F.2d 741, 745–46 (8th Cir.1987) (citing *Lane,* 474 U.S. at 450 & n. 13, 106 S.Ct. at 732 & n. 13), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1083, 99 L.Ed.2d 242 (1988).

nated defense to the offenses charged. Hence, this case does not pose the danger of trying a defendant *"en masse* for the conglomeration of distinct and separate offenses committed by others." *Kotteakos v. United States,* 328 U.S. 750, 775, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946); *see also Jones,* 880 F.2d at 62–63; *United States v. Sazenski,* 833 F.2d 741, 745–46 (8th Cir.1987), *cert. denied,* 485 U.S. 908, 108 S.Ct. 1083, 99 L.Ed.2d 242 (1988). We conclude that even if the district court had improperly allowed the offenses to be joined against the defendants, whether under Rule 8(a) or 8(b), there was no actual prejudice to the defendants and thus we will not reverse the district court.

### B. *Federal Rule of Evidence 404(b)*

During a pretrial conference, the government announced its intent to offer certain evidence under Federal Rule of Evidence 404(b) [12] to show the defendants' intent to engage in the Sherman Act conspiracy and other evidence to show intent relating to the mail fraud counts. Upon objection, the district court ruled that the evidence should not be presented until the end of the government's case-in-chief. At the end of its case, the government again proffered its Rule 404(b) evidence, but the trial court stated "that the issues, 404(b) issues, haven't yet been put in issue," and ruled that the government could only use the evidence in rebuttal "if the issues arise."

During the defense case, Randall Bennett denied participation in the charged Sherman Act conspiracy and denied defrauding Thomas, despite numerous meetings and phone calls that might have indicated otherwise. Gary Bennett similarly denied any wrongful acts or involvement in a conspiracy. The district court ruled that the defendants' testimony had opened the door and put in issue the questions of intent to conspire, motive and opportunity, lack of mistake with regard to meetings and knowledge and plan of the witnesses with respect to both the Sherman Act conspiracy and the scheme to defraud Thomas. The district court thus allowed the government to call its Rule 404(b) witnesses in rebuttal.

On rebuttal, the government called Harvey Newquist, who testified that between the fall of 1984 and March of 1986 he entered into an agreement with Randall Bennett and Southwest to allocate school bus sales and to fix prices on school buses sold in southern Minnesota.[13] As to the Thomas fraud, the government called officials of the Balboa Insurance Company and an insurance agent retained by Southwest in 1986, who testified that between the end of 1986 and March 1989 Southwest submitted bids to schools in South Dakota and Minnesota that were accompanied by fraudulent bid bonds supposedly written by Balboa containing fraudulent documents and signatures.[14]

The defendants argue on appeal that the district court erred in allowing the government to present Rule 404(b) evidence in rebuttal and that the Rule 404(b) evidence was inadmissible under any circumstance. The government argues that the Rule 404(b) evidence should have been admitted during its

---

**12.** Federal Rule of Evidence 404(b) states:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

**13.** The district court instructed the jury that the evidence concerning the Minnesota conspiracy

was admissible against Randall Bennett and Southwest only, and only for the limited purpose "to decide whether the defendant had an intent to conspire as charged in Count 1 ... [and] not ... as evidence that he violated the law as set out in Count 1."

**14.** Similarly, prior to the bid bond testimony, the district court admonished the jury that it could consider that evidence only under counts 2–4, and "only in considering whether the defendant had any motive to defraud or possessed an intent to defraud or made any plan to defraud or whether he acted as he did because of mistake or accident." The district court repeated its Rule 404(b) evidence instructions at the close of the case.

case-in-chief and that the district court's decision to instead admit the evidence during the government's rebuttal does not constitute prejudicial error.

█ Rule 404(b) evidence "is admissible when it is relevant to an issue in question other than the character of the defendant, there is sufficient evidence to support a finding by the jury that the defendant committed the prior act, and the potential unfair prejudice does not substantially outweigh the probative value of the evidence." *United States v. Marin–Cifuentes,* 866 F.2d 988, 996 (8th Cir.1989). A decision to admit evidence under Rule 404(b) "will not be disturbed unless ... the evidence in question clearly had no bearing upon any of the issues involved." *United States v. Estabrook,* 774 F.2d 284, 287 (8th Cir.1985). Rule 404(b) evidence has been admitted to prove intent and lack of mistake in Sherman Act and mail fraud trials. *See, e.g., United States v. Misle Bus & Equip. Co.,* 967 F.2d 1227, 1234 (8th Cir. 1992) (holding in similar bus bid rigging trial that evidence of another conspiracy was properly admitted to show defendants' knowledge and general intent); *United States v. Suntar Roofing, Inc.,* 897 F.2d 469, 479–80 (10th Cir.1990) (holding that admission of Rule 404(b) evidence was proper); *United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 530–32 (4th Cir.) (finding evidence of prior bid rigging relevant to intent and knowledge charged in Sherman Act count), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 457 (1985); *United States v. Baykowski,* 615 F.2d 767, 772–73 (8th Cir. 1980) (Rule 404(b) evidence admissible to prove essential element of an offense).

In the case at bar, the evidence of the Minnesota conspiracy and the bid bonds was admissible and relevant to the issue of intent to conspire, motive, and lack of mistake.

The evidence of the Minnesota conspiracy was of the exact nature of the charged South Dakota conspiracy, involving bid rigging of bus sales. Similarly, the rigged bid bonds involved the same falsification of documents and signatures as was involved in the mail fraud count and were relevant to the intent and motive surrounding the mail fraud issue.

█ We find that the district court should have allowed the government to produce this testimony in its case-in-chief. The fundamental concern here is whether allowing the government to produce this testimony on rebuttal prejudiced the defendants. The Fourth Circuit confronted a similar situation in *Smith Grading & Paving,* 760 F.2d at 530–31, and held that Rule 404(b) evidence was admissible in rebuttal even when that evidence was also impermissible impeachment evidence of a collateral matter under Rule 608(b). The Minnesota conspiracy evidence and the evidence regarding the false bid bonds fell within the scope of both Rule 404(b) and Rule 608(b).[15] The evidence was both relevant evidence of intent, admissible under 404(b), and collateral evidence attacking the credibility of a witness, inadmissible under Rule 608(b).

In addressing the same conflict between the rules, the Fourth Circuit held that a district court did not abuse its discretion in admitting Rule 404(b) evidence on rebuttal, but expressed caution about the practice. The court stated:

> [T]he better practice is for the prosecutor to introduce this type of evidence in his or her case-in-chief.... However, if the government attempts to introduce past bad acts through cross-examination of the defendant or on rebuttal, the trial court should also determine whether the evidence is cumulative or necessary to prove

15. Federal Rule of Evidence 608(b) states:
*Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruth-

fulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness's privilege against self-incrimination when examined with respect to matters which relate only to credibility.

an essential element of the crime charged. If the evidence is cumulative, the trial court should more closely scrutinize its prejudicial effect. If the evidence is necessary to prove an element of the charge, the trial judge may have erred in not sustaining the defendant's motion for a directed verdict of acquittal. Moreover, a defendant may have a valid objection, under federal rule 611(b), that the government's cross-examination exceeds the scope of the direct. These added considerations are necessary not only to limit the impact of rule 404(b) on rule 608(b), but also to limit the prejudicial effect of allowing the government to have the last say through evidence of a defendant's prior misconduct.

*Smith Grading & Paving,* 760 F.2d at 531; *see also United States v. Horton,* 847 F.2d 313, 324–25 (6th Cir.1988) (holding that Rule 404(b) evidence is admissible in rebuttal).

The purpose of Rule 608(b) is to prevent surprise, prejudice, and undue delays of trial. Rule 608(b) seeks to avoid proof of the underlying behavior, which may confuse or sidetrack the jury. Moreover, the rule is designed to protect a witness by prohibiting extrinsic evidence offered solely for the purpose of attacking that witness's credibility. *See Smith Grading & Paving,* 760 F.2d at 531 n. 3; Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* § 608(5) (1993). Each of these purposes should be secondary to the overriding purpose of Rule 404(b): admission of evidence probative of a material issue in the case. In the case at bar, the district court followed its "usual practice" of evaluating Rule 404(b) evidence at the end of the government's case-in-chief. The district court at that time stated that the issue of intent had not yet been put in issue. In so ruling, the district court overlooked the fact that intent was an element of both of the charged conspiracies, and thus was an issue relevant to the government's burden of proving its case beyond a reasonable doubt. *See*

*Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991) (holding that when defendants plead not guilty, the government is required to prove all elements of charged offenses, including intent).

While we hold it would have been preferable for the district court to admit the Rule 404(b) evidence during the government's case-in-chief, we find that under the circumstances it was not an abuse of discretion for the district court to proceed as it did, admitting extrinsic evidence in rebuttal that was probative of material issues in the case. The basic concern is whether the Rule 404(b) evidence was relevant. We find that it was and therefore admissible.[16]

## C. Exclusion of Defendants' Evidence

■ The defendants argue that the district court abused its discretion by refusing to admit purportedly relevant evidence regarding their good faith defense to the mail fraud claims and in excluding Thomas's price list. One of the excluded documents was the settlement that Thomas and the defendants entered into after Hedgecock, Thomas's regional manager, learned through Jim Shafer that Brandon Valley School District had paid a higher price than was reported by the defendants. The defendants attempted to introduce the settlement to show that Thomas had released its claims against the defendants and did not believe it was defrauded. We agree with the district court that the civil settlement between Thomas and the defendants does not influence the determination of whether or not a crime was committed.

■ The district court also excluded reports that showed whether or in what amount Thomas granted concessions on sales to particular distributors, and Thomas's gross profit on each of its distributors' sales. The defendants claimed that these documents would show that Thomas did not suf-

---

**16.** The defendants' reliance on *United States v. Nichols,* 808 F.2d 660 (8th Cir.), *cert. denied,* 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987), is misplaced. In *Nichols,* the defendant was charged with distribution of cocaine and not with conspiracy to distribute, and his defense was that he met the government's informant to collect a debt, not to sell cocaine. Intent was not

an essential element of the crime. *See United States v. Manganellis,* 864 F.2d 528, 535 (7th Cir.1988) (indicating that "implicit in [the holding in *Nichols* ] that knowledge or intent was not in issue is the conclusion that the statute itself does not automatically place the defendant's knowledge or intent in issue").

fer any losses by granting concessions and that other distributors were granted concessions. Whether or not Thomas made profits in spite of the concessions is not relevant to the question of whether fraud was committed by the defendants. *See, e.g., United States v. Solomonson,* 908 F.2d 358, 364 (8th Cir.1990) (reasoning that whether or not a victim sustains a loss is not relevant to a charge of fraud). Similarly, the granting of concessions by Thomas to other distributors is irrelevant.

We likewise agree with the district court's exclusion of exhibits designed to establish that the defendants needed the concessions in order to show a profit. This is not a defense to fraud. Furthermore, the jury heard the defendants' claim that they could not have stayed in business absent the concessions, and thus the exhibits were cumulative.

The defendants next contend that the district court abused its discretion by excluding Thomas's 1987 price book, which listed the prices of Thomas buses and options. Neither of the Bennetts testified that they used the price book in preparing their bids, and the defendants' bid files did not contain calculations of their costs. The price book is of questionable relevance and the district court did not abuse its discretion in excluding it. The court's exclusion of the list of costs for the "add ons" to the bus which was the subject of count four was cumulative; Gary Bennett had already testified to the amount. We find that the excluded evidence was either irrelevant or cumulative, and thus the district court did not abuse its discretion in excluding it.

### D. *Purported Inconsistency of the Verdicts*

Finally, the defendants argue that their convictions on the substantive mail fraud counts should be reversed because the verdicts are inconsistent with their acquittal on the mail fraud conspiracy count. Inconsistency of verdicts by itself, however, is not grounds for reversal of a jury's verdict. *United States v. Powell,* 469 U.S. 57, 67–69, 105 S.Ct. 471, 478–79, 83 L.Ed.2d 461 (1984); *United States v. Barnhart,* 979 F.2d 647, 650 (8th Cir.1992).

Furthermore, the verdicts rendered by the jury are not inconsistent. The fundamental aspect of a mail fraud conspiracy charge is an agreement to use the mails to defraud. *Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *accord United States v. Earles,* 955 F.2d 1175, 1178 (8th Cir.1992). In this case, the jury was instructed that it must find this agreement in order to render a guilty verdict on count 2, the mail fraud conspiracy count. The substantive offenses of mail fraud found in counts 3 and 4 did not, however, involve any agreement at all. The elements of proof for the conspiracy count differed from those for the substantive mail fraud counts. Hence, the jury's verdict of not guilty on the conspiracy count is not inconsistent with the jury's verdict of guilty on the substantive mail fraud counts.

### III. CONCLUSION

Based on the foregoing analysis, the judgments of conviction of each defendant are affirmed.