UNITED STATES of America, Plaintiff,

v.

**Walker LABRUNERIE, Defendant.**

**Crim. A. No. 95–00125–02–CR–W–8.**

United States District Court,
W.D. Missouri,
Western Division.

Oct. 13, 1995.

---

**1.** The Court notes that these ranges are lower than sentences which could be imposed on Kenneth Wilderman as they are calculated according to the base offense levels. The base offense levels would in all likelihood be increased under special provisions of the *Guidelines;* this in turn would dictate higher ranges of possible fines. §§ 2G2.2(b), 2G2.4(b).

Paul Becker, United States Attorney's Office, Organized Crime Strike Force, Kansas City, MO, for plaintiff.

James R. Hobbs, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for defendant.

### ORDER GRANTING MOTION TO SEVER COUNTS

LARSEN, United States Magistrate Judge.

Before the court is defendant's motion to sever counts one through seven from the remaining counts on the ground that they are improperly joined. I find that all of the offenses charged in the indictment are not part of the same series of acts or transactions; therefore, defendant's motion will be granted.

### I. BACKGROUND

On July 25, 1995, an eleven-count indictment was returned charging defendant with conspiracy, bribery and money laundering. Specifically, count one charges defendant and codefendants Morgan and Weber with conspiracy to commit bribery and money laundering by paying $20,000 to City Councilman Michael Hernandez in exchange for his support in dropping a condition from a proposed ordinance which would have required Morgan and LaBrunerie to pay for one half of the cost of building Line Creek Parkway along the proposed Line Creek Meadows subdivision. Count two charges all three defendants with bribery, and counts three through seven charge Morgan and LaBrunerie with money laundering dealing with the Line Creek Parkway conspiracy.

Count eight charges Morgan and LaBrunerie with conspiracy to commit bribery and money laundering by paying $50,000 to City Councilman Michael Hernandez for his assistance in the sale of property near the intersection of Barry and Baughman Roads which was owned by Morgan and LaBrunerie to the City of Kansas City for use as a Water Department maintenance facility. Count nine charges Morgan and LaBrunerie with bribery, count ten charges LaBrunerie with money laundering, and count eleven charges Morgan and LaBrunerie with money laundering, all in relation to the Barry/Baughman project.

On September 5, 1995, defendant LaBrunerie filed a motion to sever counts on the grounds that the facts alleged in counts one through seven are completely separate from the facts alleged in counts eight through eleven, and neither matter is interrelated or dependent upon one another.

On September 26, 1995, the government filed a response in opposition to the motion, arguing that even if the two groups of charges were severed, "the Government would still be required to present evidence of how Councilman Hernandez first approached the defendants and a logical sequence of events following the first bribery payment." The government further argues that even if the evidence were not deemed "inextricably intertwined," the proof of one bribe would be admissible in evidence of the trial of the other bribe pursuant to Federal Rule of Evidence 404(b) to show motive, intent, preparation, plan and knowledge.

### II. JOINDER

Rule 8, Federal Rules of Criminal Procedure, establishes the requirements for joinder of offenses or defendants in the same indictment. The objective of Rule 8 is to balance the prejudice inherent in joint trials against the interests in judicial economy. Whether counts are properly joined under

Rule 8 is a question of law. *United States v. Rodgers,* 732 F.2d 625, 628 (8th Cir.1984). The propriety of joinder must appear on the face of the indictment. *United States v. Bledsoe,* 674 F.2d 647, 655 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). *See also United States v. Grey Bear,* 863 F.2d 572, 573–578 (8th Cir.1988) (en banc) (statement of Lay, J.), *cert. denied,* 493 U.S. 1047, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990).

■■■ Defendant argues that counts one through seven are improperly joined with counts eight through eleven pursuant to Federal Rule of Criminal Procedure 8(a).[1] However, unless all defendants are charged in all counts of the indictment, joinder of offenses in multiple-defendant cases is judged by Rule 8(b)[2] rather than 8(a). *United States v. Southwest Bus Sales,* 20 F.3d 1449, 1454 (8th Cir.1994). This is significant because the language of Rule 8(a) does not allow joinder on the same basis as 8(b); the words "same or similar character" are omitted from 8(b). The rationale for applying 8(b) rather than 8(a) in multiple defendant cases is stated in *United States v. Jones,* 880 F.2d 55, 61 (8th Cir.1989):

> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses.

(citing *Cupo v. United States,* 359 F.2d 990 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1967)). Therefore, there are definite limits to what the government can put together in a single indictment. *United States v. Nicely,* 922 F.2d 850, 853 (D.C.Cir.1991).

■■ For joinder of defendants under Rule 8(b) to be proper, there must be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense. *United States v. Sazenski,* 833 F.2d 741, 745 (8th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1079, 99 L.Ed.2d 238 (1988). Furthermore, to be part of the "same series of acts," the offenses charged must be part of one overall scheme about which all joined defendants knew and in which they all participated." *Id.; United States v. Bledsoe,* 674 F.2d 647, 656 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). Rule 8(b)'s language "may not be read to embrace similar or even identical offenses, unless those offenses are related.... [T]here must be a logical relationship between the acts or transactions within the series." *United States v. Nicely,* 922 F.2d at 853 (quoting *United States v. Perry,* 731 F.2d 985, 990 (D.C.Cir.1984)). This depends upon the relatedness of the facts underlying each offense.

> "[W]hen the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper." *United States v. Gentile,* 495 F.2d 626, 630 (5th Cir.1974). When there is no "substantial identity of facts or participants between the two offenses, there is no 'series' of acts under Rule 8(b)." *[United States v.] Marionneaux,* 514 F.2d [1244,] 1249 [ (5th Cir.1975) ].

*United States v. Lane,* 735 F.2d 799, 804 (5th Cir.1984), *rev'd on other grounds,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).[3]

---

**1.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

**2.** Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

**3.** The Supreme Court held that improper joinder of defendants does not, in itself, violate the Constitution; rather, misjoinder arises to the level of

In order to determine whether the facts underlying each offense are "so closely connected that proof of such facts is necessary to establish each offense," it is necessary to recite in more detail the charges in the indictment.

Count one, the Line Creek Parkway conspiracy (from July 1992 to January 19, 1993), alleges the following facts:

On May 28, 1992, an ordinance was introduced to rezone 90 acres of land from agricultural and low density residential use to medium density residential use and to approve a development plan. The purpose of the rezoning was to allow the construction of 269 single family homes. This land was held in the name of Real Properties Holding, Inc., for the true owners who included codefendant Mark Morgan and the Walker LaBrunerie Trust. Pursuant to standard written City regulations and policies, the developers would be required to pay for one half of the construction cost of proposed Line Creek Parkway which was estimated at $521,400.

While the ordinance was pending before the Plans and Zoning Committee, City Councilman Michael Hernandez solicited $20,000 from defendant and codefendant Mark Morgan in exchange for Hernandez' support in dropping the above-mentioned condition from the ordinance. Codefendant Chuck Weber, Jr., delivered the bribe offer from Hernandez to defendant and Morgan, and then delivered the acceptance of that offer back to Hernandez. Weber then assisted in putting Hernandez in touch with defendant. On July 16, 1992, Hernandez and Weber (then a member of the City Council) voted in favor of the substitute ordinance which did not require the developers to pay any construction costs of proposed Line Creek Parkway.

On October 16, 1992, Morgan wrote a $5,000 check to a third party as partial payment of the bribe to Hernandez. On October 27, 1992, defendant directed a third party to exchange the $5,000 check for a disbursement check payable to Walkin Westport, Inc., and defendant delivered that check to Hernandez.

On November 24, 1992, Morgan wrote a $5,000 check to a third party. On December 2, 1992, defendant directed the third party to exchange the check for a disbursement check payable to Hispanic Planning Project, and defendant delivered the check to Hernandez.

On December 10, 1992, Morgan wrote a $5,000 check to a third party. On December 16, 1992, defendant directed the third party to exchange the check for a disbursement check payable to Hispanic Planning Project, and defendant delivered the check to Hernandez.

On December 21, 1992, Morgan wrote a $2,500 check to a third party. On December 24, 1992, defendant directed the third party to exchange the check for a disbursement check payable to Hispanic Planning Project, and defendant delivered the check to Hernandez.

On January 14, 1993, Morgan directed one of his partners to write a $2,500 check to a third party. On January 19, 1993, defendant directed the third party to exchange the check for a disbursement check payable to Hispanic Planning Project, and defendant delivered the check to Hernandez.

All of the checks were thereafter converted to cash by Hernandez and used for his own benefit.

Count eight, the Barry/Baughman conspiracy (from January 1993 to July 5, 1993) alleges the following facts:

Since the late 1980's the City of Kansas City, Missouri, had been seeking to purchase land north of the Missouri River to serve as a site for a Water Department maintenance facility. One site under consideration was located at the intersection of Barry and Baughman Roads. In February 1992, the purchase of this site was considered by the City Council. On February 27, 1992, the ordinance authorizing the purchase was sent back to committee by the full City Council for further study of alternative sites due to vocal opposition by adjoining homeowners.

a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. The Court

therefore held that the harmless error rule applies to improper joinder.

In January 1993, defendant offered to give $50,000 to the Hispanic Planning Project in exchange for Hernandez' assistance in the sale of the Barry/Baughman property. Hernandez agreed to accept the money, and thereafter met with city staff and neighborhood groups to overcome the objections of the homeowners to the maintenance facility. In April 1993, Hernandez testified at a committee meeting and recommended the purchase of the Barry/Baughman site.

On April 22, 1993, the City Council passed the ordinance which authorized the expenditure of $560,000 for acquisition of the Barry/Baughman site. Councilman Hernandez voted in favor of the ordinance.

On May 7, 1993, $548,081.54 was transferred to M.T. Investment Company/Barry Special Account on behalf of defendant and codefendant Morgan for the purchase of the property.

On May 8, 1993, defendant directed a third party to exchange a $20,000 check for a disbursement check payable to the Hispanic Planning Project, and defendant delivered the check to Hernandez.

On June 29, 1993, codefendant Morgan wrote a $30,000 check to a third party. On July 5, 1993, defendant directed the third party to exchange the check for a disbursement check payable to the Hispanic Planning Project, and defendant delivered the check to Hernandez.

Both of the checks were thereafter converted to cash by Hernandez and used for his own benefit.

 In this case, the government has failed to show either a common scheme connecting the two conspiracies or any participation by Weber in the Barry/Baughman conspiracy. The mere fact that two conspiracies have overlapping memberships will not authorize a single indictment if the conspiracies cannot be tied together into one common plan or scheme. *United States v. Nicely,* 922 F.2d at 853; *United States v. Velasquez,* 772 F.2d 1348, 1353 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 ·(1986); *United States v. Lane,* 735 F.2d at 805. Furthermore, mere similarity of offenses is not sufficient. Otherwise, "the government could take any two counts, however disconnected, and join them in one trial so long as they involved the same type of crime and some of the same defendants." *United States v. Lane,* 735 F.2d at 805. The requirement of a common scheme ensures that the offenses are actually part of a series of transactions. *Id.*

In *United States v. Lane,* 735 F.2d 799 (5th Cir.1984), the government charged James and Dennis Lane with a conspiracy to commit mail fraud and mail fraud after they purchased a building, had it destroyed by fire and collected the insurance money, then purchased another building for the purpose of burning it and collecting the insurance money. In addition, James Lane was charged with another count of mail fraud for collecting insurance money after having his failing restaurant torched by an arsonist. The court held that the latter count was improperly joined.

The following facts led to the six count indictment. During the summer of 1978, James Lane was operating an unsuccessful restaurant. He hired Sidney Heard to burn the building in order to get out of his lease and his partnership with the cook. The restaurant was burned and Lane collected the insurance money. In 1980, James Lane contacted Heard and offered to pay him to burn a duplex Lane had just purchased with his brother, Dennis. The building was burned and insurance money was collected. Several weeks after the duplex fire, the Lanes met with Heard again, paid Heard for the duplex fire, and discussed opening a flower shop in order to burn it for the insurance money. After the shop was set up but before it could be burned, the defendants were caught and indicted.

James Lane was charged in count one with mail fraud relating to the 1979 fire at his restaurant. Counts two through four charged both Lanes with mail fraud relating to the 1980 fire of the duplex. Count five charged both Lanes with conspiracy to burn the flower shop.

The court held that count one was improperly joined with the remaining counts.

There is no substantial identity of facts between Count 1 and the other counts. The [burning of the restaurant] involved events that were entirely separate from the other crimes and that were completed before the other crimes began. There was no fact that could be proved to establish guilt under Count 1 which would also establish any of the other offenses.... The government points us to no evidence at trial showing that there was a greater plan to commit a series of arsons for profit when the [restaurant] fire was planned and carried out. On the contrary, when J.C. Lane first approached Signey Heard and proposed the [restaurant] fire, Lane stated that he was in a losing restaurant business and wanted to get out of his lease and his partnership with Jack Stotts. The other two fires, by contrast, did not involve legitimate ongoing businesses with innocent partners; both the duplex and the flower shop were set up purely for an insurance scam.

*United States v. Lane,* 735 F.2d at 804–805.

In *United States v. Sazenski,* 833 F.2d 741 (8th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1079, 99 L.Ed.2d 238 (1988), Dennis Sazenski and Edward MacDonald were charged with conspiracy to possess marijuana with intent to distribute, and Sazenski was charged with three counts of distributing cocaine. These charges resulted from the following facts:

A DEA informant made three purchases of cocaine from Sazenski on January 22, April 15, and April 18, 1986. On August 30, 1986, Sazenski asked the informant if he wanted to buy more cocaine. The informant declined but said he was putting together a sale of 2,000 pounds of marijuana. At a meeting on September 17, 1986 (the conspiracy was alleged to have begun on September 16, 1986), Sazenski was introduced to an undercover DEA agent, and introduced MacDonald as his partner. The court, in holding that the conspiracy count was improperly joined with the cocaine counts, stated:

MacDonald had absolutely no connection to the cocaine transactions that took place between Dennis Sazenski and the government informant five months before the marijuana conspiracy was alleged to have begun. The government argues that there is a sufficient connection between the defendants' offenses because the cocaine dealings "provided the genesis" of the marijuana operation and because the same informant was involved in both the cocaine and marijuana transactions. We must disagree. The former argument is irrelevant; it fails to address how MacDonald was connected to the cocaine dealings. The latter argument would support joinder for trial of every defendant with whom a government informant had transacted.

*United States v. Sazenski,* 833 F.2d at 745.

In *United States v. Nicely,* 922 F.2d 850 (D.C.Cir.1991), four defendants were convicted of conspiracy in relation to a scheme to defraud the SCT Corporation. In addition, those four defendants and defendant Nicely were convicted of conspiracy to launder money provided by an undercover IRS agent.

The scheme to defraud SCT Corporation involved the following facts: Officers of SCT Corporation met with defendants Smith and Blankenship who convinced SCT to retain their company (Kelgre) to help SCT obtain federal government contracts. The retainer agreement provided that SCT would pay Kelgre $10,000 per month. Smith then attempted to get SCT to become involved with a European Arabian Trust whose principal officers were defendants Johnson and Koral.

While all of this was happening, IRS agent Wallace was undertaking a money laundering investigation. He was introduced to defendant Nicely and told Nicely he had large amounts of cash to move and that the names of the owners must never be disclosed. Nicely provided a letter to Agent Wallace indicating that Kelgre (owned by defendants Smith and Blankenship) could deposit the money in an account it had just opened at the Leeward Islands Bank & Trust (a subsidiary of the European Arabian Trust run by defendants Johnson and Koral).

The court held that the two conspiracies were improperly joined:

The government's position on appeal is that the record shows two substantially interrelated conspiracies, insofar as the ap-

pellants constructed a sophisticated apparatus to maintain the illusion that they were involved in legitimate, well-funded projects associated with United States intelligence groups. Misrepresentations made in the course of both schemes included claims that some of the appellants were employed by the CIA, that an Asian trust held vast gold reserves which EAT could invest, and that there was a still-secret currency reform proposal. The government insists that a necessary component of both schemes was the "symbiotic" . . . relationship between Kelgre (run by Smith and Blankenship) and EAT (and its subsidiary Leeward, both run by Johnson and Koral), whereby each lent credibility to the other via fraudulent misrepresentations. The currency reporting violations occurred at the height of the ongoing fraud of SCT, and all the defendants (except Nicely) were involved in both frauds, whose common objective, according to the government, was to make money by charging fees for the performance of services.

. . . Beyond the similarity in membership, the government points to nothing in common between the two conspiracies more specific than the common use of falsehoods to make money. . . . [I]dentifying the common objective as making money and the shared modus operandi as telling lies are patently insufficient grounds for joinder.

*United States v. Nicely,* 922 F.2d at 853–855.

In *United States v. Schweihs,* 971 F.2d 1302 (7th Cir.1992), Schweihs and Daddino were charged jointly with one count of conspiracy to commit extortion and with substantive acts of extortion. Schweihs was also charged with two counts of extortion unrelated to the conspiracy and against an unrelated victim. The court held that those two counts were improperly joined since there was no evidence that Daddino was in any way connected with the second extortion; and although the offenses were both extortions, there was no evidence that Schweihs' extortion was part of the plan by Schweihs and Daddino to extort money from the first victim.

In this case the government argues that the facts underlying each offense are "inextricably intertwined" because "[s]hould the charges be severed, the Government would still be required to present evidence of how Councilman Hernandez first approached the defendants and a logical sequence of events following the first bribery payment." I disagree that the government would be required to present this evidence at severed trials. It would be irrelevant in a trial of the Line Creek Parkway conspiracy what occurred after the bribery payments. Once the evidence of the bribery payments was introduced, the story would be complete. Furthermore, in a trial of the Barry/Baughman conspiracy, it would not be necessary to introduce evidence of the entire Line Creek Parkway conspiracy in order to show the jury how Hernandez first approached the defendants. The indictment itself is proof of that. Read alone, count eight tells a story by itself.

The government cannot show that these charges are all part of one overall scheme about which all joined defendants knew and in which they all participated. Charles Weber is not named in any of the counts dealing with the Barry/Baughman conspiracy. The indictment does not even allege that Weber, as a member of the City Council, voted in favor of the purchase of that property. There is no indication that Weber had anything to do with this scheme, or that he knew anything about this scheme. If the charges were all part of one overall scheme, the government no doubt would have charged one conspiracy rather than the two separate conspiracies charged in this indictment.

The government cannot show that the facts underlying each offense are so closely connected that proof of those facts is necessary to establish each offense. In the Line Creek Parkway conspiracy, Hernandez solicited the bribe through fellow councilman Charles Weber; however, in the Barry/Baughman conspiracy, defendant allegedly approached Hernandez and offered a bribe. The services of Hernandez were completely different in each case. The purposes of the bribes were completely different in each

case. The time frames of the conspiracies have no overlap.

The government cannot show that there was a greater plan to commit a series of bribes when the original bribe was accepted. The fact that the first bribe "provided the genesis" of the second bribe is irrelevant. *United States v. Sazenski*, 833 F.2d at 745. There is no common objective between the two conspiracies. The shared modus operandi as bribing Hernandez is insufficient as a basis for joinder. *United States v. Nicely*, 922 F.2d at 855.

The government argues alternatively that proof of one bribe would be admissible in evidence of any trial of the other bribe pursuant to Rule 404(b) and therefore severance would not remedy the underlying claim by defendant LaBrunerie that he is unfairly prejudiced by the joinder of these two bribes in a single indictment. The problem with this analysis is that LaBrunerie's claim is not that he is unfairly prejudiced by joinder. LaBrunerie's claim is that the two sets of counts are improperly joined.

Rule 8 establishes the requirements for joinder of offenses or defendants in the same indictment. Rule 14 allows the trial court to order severance, even though joinder of offenses or defendants is proper under Rule 8, if it appears that the defendant or government is prejudiced by the joinder. Rule 8 does not take prejudice into consideration at the pretrial stage.[4] Either the counts are properly joined or they are not. Courts look to whether a defendant will be unduly prejudiced when determining whether properly joined counts should be severed under Rule 14.

Whether evidence of other crimes is admissible under Rule 404(b) is a factor in determining whether a defendant will be prejudiced by joint trial of properly joined counts. It is not a factor in determining whether counts are properly joined. In addition, whether evidence of an entire conspiracy along with several substantive crimes will be admissible under Rule 404(b) is completely discretionary with the trial judge who must balance the probative value of that evidence against the danger of unfair prejudice, confusion of the issues, or misleading the jury, and considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### III. CONCLUSION

Because all of the offenses charged in the indictment are not part of the same series of acts or transactions, counts one through seven are improperly joined with counts eight through eleven. Therefore, it is

ORDERED that defendant's motion to sever counts one through seven from counts eight through eleven is granted.

Counsel are reminded that objections to this order on the ground that it is clearly erroneous or contrary to law must be filed and served within ten days.

---

4. Courts of appeals require reversal only if misjoinder resulted in actual prejudice. *See United States v. Sazenski*, 833 F.2d at 745–746. The Courts of Appeals are necessarily dealing with cases after error has been committed. However, at the pretrial stage, the question is not whether a conviction should be reversed—the question is whether improperly joined counts should be severed thereby preventing error from occurring.